Linus L. Baker
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:          913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR DISTRICT OF KANSAS**

**Phillip Michael Eravi**

PLAINTIFF

v.

**Craig Owens,** *in his individual capacity* as city manager for the City of Lawrence, Kansas
*

**Lisa Larsen,** *in her individual capacity* as Mayor of Lawrence Kansas City Commission
*

**Bart Littlejohn,** *in his individual capacity* as Mayor of Lawrence Kansas City Commission
*

**Anthony Brixius,** *in his individual capacity* as Police Officer for the City of Lawrence Kansas

**Matthew Leslie,** *in his individual capacity* as Police Officer for the City of Lawrence Kansas
*

**James Miller,** *in his individual capacity* as Police Officer for the City of Lawrence Kansas
*

**Amber Sellers,** *in her official capacity* for the City of Lawrence, Kansas

DEFENDANTS

Case No.    5:25-cv-4074

Jury Trial Requested

1

## COMPLAINT

### JAN 10, 2023

1.     Phillip Michael Eravi is a citizen journalist.

2.     On January 10, 2023, the plaintiff Michael Eravi (Mr. Eravi) attended and spoke when it was his turn at a Lawrence City Commission meeting which was open to the public.   Mr. Eravi referred to an incident involving Anthony Kennon who, according to Judge John W. Broomes, experienced excessive force as pled at the hands of Lawrence City police on May 1, 2022, named Daniel Ashley, Joshua Doncouse, Austin Spencer, and Charles Smyser.

3.     Judge Broome ruled in Kennon v. Ashley, Case No. 5:24-cv-04034-JWB-BGS that when placing Mr. Kennon in a WRAP restraint, that "as pleaded, Plaintiff did not flee or resist arrest, and once handcuffed and secured in the back of the police vehicle, he was docile. Defendant Officers then unnecessarily further subdued him. Hence, the court concludes that Plaintiff plausibly pleaded an excessive force claim against all four individual officers."

4.     At the January 10th meeting when Mr. Eravi referred to this excessive force he stated "May 1st of this year, the victim of domestic violence, the person that was actually the only one with marks. Arrested for utilizing his first amendment calling your cops exactly what they are, Coward ass Bitches and then they assault him, and the chief exonerates it, and then he lies about the fucking reports."

5.     Defendant Larsen interrupted Mr. Eravi when his 3 minutes were up, and said "Michael, you're done." Mr. Eravi then stated as he turned to leave the podium "the police didn't even report the violence. They did not put it in their reports. Why?"

6.     Defendant Larsen stated to Lawerence police officer McKinley "Officer, please have him removed from the building."  Mr. Eravi was removed by officer McKinley not only from the open meeting but the entire building.

### FEBRUARY 21, 2023

7.     On February 21, 2023, Mr. Eravi attended with permission of the Commission at a Lawrence City Commission meeting which was open to the public.

8.     Mr. Eravi stated that the Commission "didn't want the public knowing the secret action points." Defendant Larsen became offended at the statement and stated "Sir, I would like you removed from the building please. Officer?"  Mr. Eravi asked "so you're going to throw me out of the building for trying to find out what the secret action points are?"  Defendant Larsen stated "I want a recess and have this gentleman removed from the meeting."  Mr. Eravi left under threat of arrest.

**MAY 16, 2023**

9.     On May 16, 2023, Mr. Eravi attended and spoke with permission of the Commission at a Lawrence City Commission meeting which was open to the public.

10.    At the meeting when it was his turn, Mr. Eravi stated matters which were germane to the business of the City Commission:

> Yeah, but look at all the money Craig saved, got Prairie Park, you wanted to take it off the budget, slash 300,000 dollars. Kill it, that's an easy way to get it off the budget. Courtney Shipley thinks it's appropriate to send emails to pub, written public comment. She also thinks it's appropriate to call citizens "son" in a meeting. I'm gonna urge everyone to vote against Courtney Shipley. Because she doesn't deserve to be up there with that kind of attitude. Your police review board has floundered. It's because of the control of your chief over here. I don't think there's anything else to say there. He controls it, why bother? And you guys are letting it happen. A little bit of English. That's a dais, not a stage. We're the public, not an audience.

11.    When Amber Sellers called a "point of order" Mr. Eravi asked Mayor Larsen "Ma'am, I would like an explanation how I wasn't in the business of the commission. She called a point of order and interrupted my public comment, and says, and expresses some kind of desire that I'm out of order somehow. I would like to know how that is. I haven't cussed once. Mayor, its your board, please explain."

12.    Sellers then responded stating "as a member of the government body, a point of order is a interrupting motion to speak to the germaneness of one's public

comments. Comments in regards to whether someone is running for commission is not the business of this body, and it's not germane to the business of this commission."

13.     The following dialogue then occurred:

| | |
|---|---|
| MICHAEL | So the business of the commission. I hope everybody just witnessed what happened here. That's interesting. The business of the commission. I don't particularly think the business, the commission really has any business. Because you guys haven't shown much leadership. Your homeless division out there is failing. The gentleman from Pinckney needs to understand that when that homeless thing gets put in your neighborhood, you're gonna have constant police traffic up and down Michigan Street, all day long. And the reason is, because the HID staff fails repeatedly. They don't take care of that camp properly. You have residents in that camp now who are the police out there. And who are managing things by manipulation and intimidation. You have people getting assaulted and police officers refusing to take a report apparently, from what I'm understanding. |
| | You know, I could be way more out of order and still be within my first amendment right, Ms Sellers. You need to understand that I have yet to express the full extent of the first amendment, in this room or out there on the streets. And I am going to be playing a role in this election, and I'll speak to it |
| SELLERS | Point of order |
| MICHAEL | As a part of the city's business |
| SELLERS | Point of order |
| | (Gavel Bangs) |
| SELLERS | Point of order |
| LARSEN | Michael, keep it to the business of the commission |
| MICHAEL | And I'll speak to it as a part of the city's business |
| SELLERS | Point of order |
| MICHAEL | Anytime |
| SELLERS | Point of order |
| MICHAEL | I choose |
| SELLERS | Point of order |
| WATTS | What is that... |
| LARSEN | Next |

| | |
|---|---|
| REIDEMANN | Time |
| LARSEN | Next |
| MICHAEl | She called a point of order |
| LARSEN | Next |
| MICHAEL | before my time was up, we're not finished yet |
| LARSEN | Michael, you're done, we're done |
| MICHAEL | I'm calling a point of order |
| LARSEN | Michael you are out of order |
| MICHAEL | I can't |
| LARSEN | Michael. Officer would you please remove Mr Eravi. |

### AUGUST 1, 2023

14.    On August 1, 2023, Mr. Eravi attended with permission of the Commission at a Lawrence City Commission meeting which was open to the public.

15.    Commissioners Shipley stated "I did want to double check..there's nothing in the Kansas constitution that requires we allow the public to remove things from the consent" to which Mr. Eravi stated "Oh my God, mis-contextualize what I say. I'll leave, that was cheap. Throw me out. Throw me out.  That was cheap.  That was cheap Courtney. Trying to misconstrue my words. That was cheap.

16.    Mayor Larsen then indicated she wanted Mr. Eravi removed and called for a Lawrence police officer.  Mr. Eravi left under threat of arrest.

### AUGUST 8, 2023

17.    On August 8, 2023, Mr. Eravi attended the Commission at a Lawrence City Commission meeting which was open to the public.

18.    Mayor Larsen stated "go back to something commissioner Shipley says. We have been hearing about this for well over a year. Concerns about the tone the nature of the general public comment."  Mr. Eravi stated "this is not going to change tone and nature ma'am." Mayor Larsen ejected Mr. Eravi stating "you're out. Officer, remove him from the meeting."

19.    Seargent Miller then confronted Mr. Eravi and made Mr. Eravi leave the building.

20.    After waiting outside to interview defendant Littlejohn, Mr. Eravi politely asked if Mr. Littlejohn wanted to comment on the "tone and nature" statement of Mayor Larsen.  Mr. Littlejohn stated "nope." Mr. Eravi politely followed up in a calm voice and non-threatening manner asking "do you see that is a problem?"

21.    Mr. Eravi then was interviewing Kevin Elliot and Claven Snow when Courtney Shipley passed by. Mr. Eravi attempted to question Ms. Shipley, "tone and what was it? Tone and content."  Mr. Eravi attempted to interview Ms. Shipley but she would not respond to the interview.

### SEPTEMBER 10, 2024

22.    On September 10, 2024, Mr. Eravi attended and spoke with the permission of the Commission at a Lawrence City Commission meeting which was open to the public.

23.    When Mr. Eravi walked up to speak, commissioner Sellers had walked out of the meeting.

24.    When Mr. Eravi began speaking during Mr. Eravi's allotted time, other people in the crowd were having what defendant Littlejohn called "side conversations."  He interrupted Mr. Eravi's speaking time and spoke to the crowd saying "let's hold off side conversations while folks are speaking."

25.    Mr. Eravi stated "does that include you.  Can you hold all your damn side conversations while I'm talking tonight Bart? Since we are in a damn clown show here, how come you can't make your commissioners stay out here?  You're not a strong mayor Bart."

26.    Defendant Littlejohn then accused Mr. Eravi of being disruptive to which Mr. Eravi stated "sir, this is my time. My time. Stop interrupting me."  Defendant Littlejohn stated "this is your warning."

27.    Mr. Eravi stated during his allotted time that "I am not being disruptive. I'm giving my speech." Defendant Littlejohn continued his  interruption during Mr. Eravi's allotted speaking time stating: "He's is being disruptive. I am trying to run

an orderly meeting while he's talking over me. If you would please remove the gentleman. We will take a recess."

28.    Defendant Brixius then confronted Mr. Eravi to force him to leave.

29.    The dialogue went like this:

| | |
|---|---|
| BRIXIUS | k, and now I'm asking you on his behalf. |
| MICHAEL | ok, so I'm being asked, I'm gonna decline unless it's under threat of arrest. |
| BRIXIUS | So, the only, the only other res resolution we have is criminal trespass. |
| MICHAEL | So you're gonna to trespass me from a public meeting? |
| BRIXIUS | [overtalk: so what I will do] is go talk to the Mayor and ensure this will be a criminal trespass |
| MICHAEL | Ok |
| BRIXIUS | During that time |
| MICHAEL | Ok |
| BRIXIUS | You are free to leave, and we would like you to leave |
| MICHAEL | Ok |
| BRIXIUS | He's telling you to leave |
| MICHAEL | So I'm gonna go ahead, and a criminal trespass, will I be arrested and taken to jail? |
| BRIXIUS | We will institute |
| MICHAEL | Can I get violated tonight? God, I hope I can get violated tonight. |
| BRIXIUS | [overtalk: a criminal case] ok? |
| MICHAEL | You will institute a criminal case |
| BRIXIUS | So, I'm going to go back and talk to the Mayor |
| MICHAEL | But will I be arrested? |
| BRIXIUS | [overtalk: you have the..] opportunity to leave right now. |
| MICHAEL | Am I under threat of arrest though? I, I, what's going on? Am I under threat of arrest? |
| LESLIE | He explained it to you. |
| MICHAEL | How can I get a criminal trespass.... |

WHEELER     He has three commissioners

BRIXIUS     We'll do

WHEELER     Have a KOMA violation

BRIXIUS     We'll do

BRIXIUS     Alright, I heard you give him the order to leave

LITTLEJOHN     Yep

BRIXIUS     You want him to leave?

| | |
|---|---|
| LITTLEJOHN | Yeah |
| BRIXIUS | You're in control because you're the mayor. |
| LITTLEJOHN | Yeah BRIXIUS Uh, the only resolution that I have is in the criminal world |
| DEVER | Sorry [walking through] |
| BRIXIUS | You do have some options I can turn to, I just want you to be aware of that. |
| LITTLEJOHN | Ok |
| BRIXIUS | Ok. And ... clarify, it was for disrupting the meeting? |
| LITTLEJOHN | Yes, yes, he was uh being disorderly because he was talking over me as well. I gave him a warning, I warned him to stop, he continued to do so. |
| BRIXIUS | Ok, Thank you |
| MICHAEL | So Anthony, where we at... |
| BRIXIUS | (to Ofc Lesie): Criminal Trespass |
| BRIXIUS | You have been criminal trespassed, you must now leave. However, I told you that before, you heard it before, ok. You are no longer free to go. You're detained. We're gonna walk out here and this oUïcer is going to write you a notice to appear. |
| MICHAEL | I'm gonna get a notice to appear? |
| D BASTON: | [overtalk: you gave him an option] You gave him an option |
| BRIXIUS | Do you want to gather your stuff? |
| MICHAEL | Yeah, I ahh |
| DR SPIEHS | ...like you to leave, you said we'd like you to leave, you did not.. you did not |
| MICHAEL | Yeah, I'm gonna grab my stuff |
| DR SPIEHS: | You gave him the impression you were gonna come back with a verdict that might allow him to stay. That you were gonna clear, that you were gonna clear that up |
| MICHAEL | So this is the deputy chief Anthony Brixius and Leslie. What's your badge number Leslie? |
| LESLIE | 546 |

9

| | |
|---|---|
| MICHAEL | At a city commission meeting where I've done nothing but use vocal words. And what's the basis for the trespass? What have I done that's caused the trespass? |
| BRIXIUS | The mayor identified you as disrupting the meeting. |
| MICHAEL | How was I disrupting the meeting during public comment? |
| BRIXIUS | Something to be issued out later. |
| MICHAEL | Something to be issued out later? |
| BRIXIUS | Right now, we're, you have to leave the building |
| MICHAEL | Right now I have to leave the building, ok |
| BRIXIUS | and you're going straight out straight out this way |
| MICHAEL | So |
| BRIXIUS | Straight to |
| MICHAEL | Straight? |
| BRIXIUS | Yep, please, sorry |
| MICHAEL | I'm taking the most immediate exit out of the building |
| BRIXIUS | Please... excuse me, Michael |
| MICHAEL | huh? |
| BRIXIUS | You are not free to go, okay? I want to be very clear on that, you are not free to go, you are being detained right now |
| MICHAEL | I'm unclear how I'm being arrested |
| BRIXIUS | You are being detained we are going this way |
| MICHAEL | I'm unclear how I'm being... What is the basis for this Anthony? |
| BRIXIUS | I've already told you [overtalk: it's for criminal trespass] |
| MICHAEL | No, all you've said is that the mayor has said I've been disruptive. What I wanna know is how I've been disruptive |
| DR SPIEHS | Michael, do you want me to stay |
| MICHAEL | Yes |
| BRIXIUS | I gave you an extra warning to leave |

| | |
|---|---|
| BRIXIUS | Do you want to go get your car? |
| LESLIE | Yeah |
| MICHAEL | Am I being arrested and taken to jail? |
| BRIXIUS | No sir, you're being, |
| MICHAEL | So, can you |
| BRIXIUS | you're getting a notice to appear |
| MICHAEL | Can you be, can you explain to me how I'm being disruptive? |
| BRIXIUS | It's not my job to determine that, ok |
| MICHAEL | k |
| BRIXIUS | What, what, what, It is the mayor's job to determine disruption, ok? |
| MICHAEL | ok |
| BRIXIUS | He told you to leave. He then asked me to have you leave |
| MICHAEL | and how can he arbitrarily just tell me to leave like that? |
| BRIXIUS | I asked you to leave, I asked you to leave. I also that during the time I was out there, that I was going to see. Because my only other measure was criminal conduct, ok? I told you uh that you should leave during that time ok? You did not leave during that time, and I went and had a discussion |
| MICHAEL | You asked me to leave |
| BRIXIUS | to ensure that he wanted you cr, that he wanted the criminal piece of that enforced |
| MICHAEL | I don't believe that the chief of police can criminally trespass me from this building er, that the dep, go ahead, yeah, I got my camera going. But I can't get to where the mayor can criminally trespass me, out of the public comment period in a public building. In the commission room. |
| BRIXIUS | The mayor has control of the meeting |

30.    On September 10, 2024, defendant Leslie called officer Collado deliberately activating his AXON recording to record the call.

31.    In the recording it stated the following dialogue:

| | |
|---|---|
| COLLADO | What up |
| LESLIE | What's up dude |
| COLLADO | The fuck did you guys get all in? |
| LESLIE | I'm Probably going to get sued |
| COLLADO | How? |
| LESLIE | I cited him for trespassing |
| COLLADO | Who? Eravi I'm assuming? |
| LESLIE | Yeah. Apparently, deputy chief talked to the, I mean, deputy chief said he talked to the judge, and the judge was like yeah, we can do this, so... We did it |
| COLLADO | I don't like that |
| LESLIE | Right, I mean, can't really say no if it's a lawful order. If he's talking to a judge and the judge is saying yeah |
| COLLADO | Yeah, but judges interpret things |
| LESLIE | I don't disagree, I don't disagree. But I think that would quash any civil suit |

| | |
|---|---|
| COLLADO | Man, we're giving them exactly what they want |
| LESLIE | Yeah, oh, I know. Er er and they were building up. They were talking very nicely at the very beginning |
| COLLADO | Oh yeah |
| LESLIE | They get a little bit more heated and then and the end it was like, yeah. And, yeah... Oh well, I mean (laughing) if it happens it happens |
| COLLADO | Uh, I mean, I, I, here's my thing, like, I know some commanders see getting sued oh yeah you're protected. I'm like yeah, you still have to live through that |
| LESLIE | Yeah, which, I mean, I don't mind getting deposed. |
| COLLADO | I don't mind getting deposed either but like, we're getting deposed for like two minute, er three minutes |
| LESLIE | Yeah, yes, stupid. I don't disagree (laughing) |
| COLLADO | We're fighting ... three minutes |
| LESLIE | Yeah |

| | |
|---|---|
| COLLADO | It's like, let this motherfucker say what he has to say, then hey, sit down bitch |
| LESLIE | Right, and so, they were dumb, for some reason, whoever was running the timer didn't start it. So it was like 45 seconds in and the timer hadn't started. It's like, dam, you fucked up |
| COLLADO | It's that Sherri lady's fuckin responsibility |
| LESLIE | Yeah |
| COLLADO | but she's too busy talking during the meeting. |
| LESLIE | (laughing) |
| COLLADO | Yeah, I bet they were real happy this week |
| LESLIE | Yeah, I'll see him on October 2nd, his court date |
| COLLADO | (laughing) ess |
| LESLIE | In my defense, I cou, it was my, I was simply writing (unintelligible) just a simple NTA. I was, I didn't make any decisions, I said... deputy chief said write him an NTA for criminal trespass, OK |

| | |
|---|---|
| COLLADO | (almost) should have said know what, deputy chief, why don't you write it? |
| LESLIE | (laughing) To be fair, he probably doesn't know how to |
| COLLADO | oh no, I'd be like, I'll walk you right through it man |
| LESLIE | (laughing) |
| COLLADO | I, your es, yeah |
| LESLIE | Oh, I'm going to document that deputy chief Brixius advised me to |
| COLLADO | Oh, absolutely |
| LESLIE | issue him an NTA and |
| COLLADO | Oh yeah, I would definitely do that. Thank you. Especially if it was an order |
| LESLIE | yep |
| COLLADO | But |
| LESLIE | Alright, we're headed back now, I'm almost to the station so |
| COLLADO | Alright, talk to you when you get here |
| LESLIE | bye |

32.    Mr. Eravi was charged with criminal trespass by the Lawrence City prosecutor.  Upon reviewing the body cam footage the Supervising City Prosecutor

Elizabeth Hafoka, emailed Mr. Eravi's defense attorney Angela Keck on June 26, 2025, stating the case was dismissed:

> I have been reviewing the body cam footage in preparation for today's hearing.
> At 8:03,pm Brixius said, "You have been criminally trespassed. You must now leave." Then Brixius tells Eravi he is being detained and will be given a notice to appear.
> At 8:04 pm, Brixius said "It's time to go. Are you going to gather you're your stuff?" Eravi said "Yeah, I'm going to gather my stuff."
> At 8:04 pm, Eravi gathers his stuff and they walk outside.
> I believe there was no order to leave personally communicated to Eravi by Mayor Littlejohn or Anthony Brixius prior to 8:03pm. Therefore, I believe Eravi did not violate the criminal trespass ordinance on 9/10/2024.
> The case is dismissed. I attached the dismissal I submitted to the Court. You and your client do not need to appear at 1:30 today.

### THE PARTIES

33.    Plaintiff Michael Eravi is a resident of the state of Kansas, residing in Douglas County, Kansas.

34.    Craig Owens is the city manager of the city of Lawrence. Defendant Owens is sued in his individual capacity.

35.    Lisa Larsen is a Commissioner for the city of Lawrence. Defendant Larsen is sued in her individual capacity.

36.    Bart Littlejohn was mayor of the city of Lawrence. Defendant Littlejohn is sued in his individual capacity.

37.    Anthony Brixius is an officer employed by the city of Lawrence. Defendant Brixius is sued in his individual capacity.

38.    Matthew Leslie is an officer employed by the city of Lawrence. Defendant Leslie is sued in his individual capacity.

39.    James Miller is an officer employed by the city of Lawrence. Defendant Miller is sued in his individual capacity.

# I
### FIRST CAUSE OF ACTION
### FACIAL CHALLENGE SEEKING DECLARATORY AND INJUNCTIVE RELIEF AGAINST THE CITY OF LAWRENCE
### (42 U.S.C. § 1983)

40.    Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

41.    The City's general comment policy at its open meetings does not limit topics that speakers may talk about at its general comment forum for two reasons: the general comment policy uses the word "should" and not "shall," and the "business of the board" includes topics which the Commission has no legislative control over. The presiding Mayors have misinterpreted this policy to improperly silence and then ban Mr. Eravi from its public meetings even causing his arrest.

42.    The City of Lawrence, Kansas (the City) created two public comment sections at its open meetings on October 4, 2022. (Resolution 7451). In Section 5 titled "SAME; PUBLIC COMMENT" it states that the "Governing Body shall accept General Public Comment and Public Comment on Agenda Items as follows." Under Section 5(a)(iii) it states "As noted below, public comment is limited to three minutes and should be limited to issues and items germane to the business of the Governing Body."

43.    This forum is a designated public forum.

44.    The City also provided for a separate forum for public comment time it titled as "Other Public Comment." In Section 5(e) it states "When public comment is sought on an item being considered by the Governing Body, persons may comment on that particular item at that time. Persons will be limited to addressing the Governing Body one time on that particular item, unless otherwise allowed by the presiding officer. Public comment on specific items shall be germane to the item being discussed." Thus, in the first public comment section it uses the phrase "should be limited to issues and items germane to the business…" while the "Other Public Comment" Section uses the phrase "shall be germane to the item being discussed."

45.    This forum is also a designated public forum because "business of the board" includes all topics and is arbitrarily interpreted by each presiding mayor.

46.    The City is bound by its own rules.  The City used the permissive word "should" in context of the "business" of the Board rather than the imperative word "shall" (used in the agenda section) in its Public Comment Section.  Thus, giving "should" its usual meaning, there was a suggestion but no requirement for public comments to be connected at all to the "business" of the City.  This interpretation is born out in application in which the Commission has historically allowed an unlimited range of topics to be discussed over a period of years during the Public Comment section of the meetings.

47.    A  provision also states in part: the "following will not be tolerated: uttering fighting words, slander, speeches invasive of the privacy of individuals, unreasonably loud or repetitious speech, and speeches so disruptive of the proceedings that the business of the City is substantially interrupted."

48.    On August 1, 2023, the City adopted Resolution No. 7496, which replaced 7451. The "should" and "shall" portions of the respective public comment sections remained the same.

### THE HISTORIC RANGE OF TOPICS AT THE PUBLIC COMMENT SECTIONS

49.    Then Mayor Shipley defined "Business of the Governing Body" as "the City of Lawrence's business" while Mayor Larsen defined it as "issues for which the City had purview over."

50.    Mayor Larsen told the Lawrence Journal-World newspaper that "the issue of what is considered a germane topic is very subjective, and the city doesn't have a policy that provides clear guidelines on the topic. Instead, she said each commission is given wide latitude to make that determination, which she said can be difficult."

51.    Larsen admitted under oath to making these statements.  When asked why the policy was "so subjective, in your opinion, to enforce" Larsen stated: "Because each mayor is their own individual – I mean that's one – aspect of it, and so it's up to them to interpret it how they want to interpret it."

16

Q. And being subjective means that their interpretations don't necessarily have to follow or be even consistent with the interpretations of the preceding or the following mayor?
A. No, it would be up to each mayor
Q. Each mayor?
A. – as to how they want to do that.

52.    The City formerly livestreamed its public meetings through YouTube but as of July1, 2025, it no longer live streams but instead records them and posts them later on its website.

53.    Dr. Justin Spiehs had been a frequent and consistent reporter, speaker, and listener at the Commission meetings on a wide range of topics including criticizing both City mayors Courtney Shipley and Lisa Larsen personally and in their official conduct and policies including their ethics and competency prior to the meetings.

54.    Dr. Spiehs began reporting on and then criticizing defendants Courtney Shipley and Lisa Larsen as a citizen journalist in April 2022.  During these meetings Dr. Spiehs listens, makes observations, and at times questions other attendees and speakers in real time for reporting purposes.

55.    Dr. Spiehs confronted then mayor Shipley in a September 2022 meeting about her racism and racist comments made regarding not appointing white board members because they were white. Dr. Spiehs then published in a September YouTube video calling out Shipley as a racist with racist policies.

56.    The City or the office of the Lawrence City Mayor routinely solicits or obtains suggestions from individuals regarding possible topics for a Mayor's official proclamation and is part of the business of the Board.  Proclamations are placed on the City Commission's public meeting agendas.

57.    According to Larsen, there has never been a limitation on proclamation topics. The City has allowed individuals to speak advocating for the adoption of a proclamations.   Topics such as marijuana, Bicycle day. And week without driving.

58.    In a May 9, 2023, open meeting, the Commission recognized June 2023 as LGBTQ+ Pride Month, May 2023 as Historic Preservation Month, May 7-13 2023 as

Public Service Recognition Week, May 2023 as Building Safety Month, and May 7-13 2023 as National Travel and tourism Week.

59.    It is the business of the City Commission to take suggestions from or solicit from citizens input regarding possible topics for official proclamations made by the City Commission.

60.    In meetings from October 4, 2022, through August 8, 2023, the City permitted discussion during the General Public Comment sections at its open meetings to include USD497 cutting 9 million dollars of education, Mayor Shipley's SUV, hairstyles, police killing a man in Memphis, TN, Jesus calling some people to take political action, chemtrails, high fructose corn syrup, "tripping" on magic mushrooms, Biden has a body double, ethnic cleansing regime in Tel Aviv, Ivermectin, Hydroxychloroquine, Nuremberg tribunals, newspaper LJWorld (and its editor Chad Lawhorn), Kansas State legislature bill SB 180, USD497 schools obtaining $500,000 to combat smoking,  local morticians regarding rise in deaths, a book – "Cause Unknown" – that is about the covid pandemic excess deaths, Star Wars day, World Health Organization, drag Queen story hour,  a speaker calling another speaker Amy Baughman a bigot, chromosomes,  the Roman Empire, child covid mask mandates, Kansas City's gender neutral bathrooms, bathrooms for gender non-conforming performers at Kansas University, defense secretary Donald Rumsfeld, and a girlfriend being "locked up over some bullshit."

61.    Larsen and Shipley did not interpret the germane standard the exact same way. In fact, their sworn testimony at an evidentiary hearing confirmed their different interpretations because Larsen testified that the germane standard was subjective, and Shipley testified that it was objective. Shipley also testified that she would have handled Dr. Spiehs's comments at the July 18 meeting differently than Larsen did, and Larsen testified the same about Shipley's handling of Dr. Spiehs' comment at the October 11 meeting.

62.    Shipley prevented Dr. Spiehs from discussing his political campaign at the October 11 meeting because she deemed it non-germane, but Larsen testified that Dr. Spiehs' campaign speech was germane to City business.

63.    Under the revised resolution policy of No. 7496 from September 5, 2023, through September 10, 2024, topics were discussed at the City open meetings: climate change protests, the 2022 Supreme Court decision on abortion, "a shoutout" to friends in Hamburg, Germany, a reading from "Calvin and Hobbes" comic book about "Shady Acres," the war in Gaza, a speaker's dog appearing at the meeting, the 1979 standoff at the US embassy in Iran, Israel Palestine conflict, a poem about Kansas Black Farmers Association, Joe Maxell, Senator Moran, independent farmers, and the Kansas Farmers Union, software purchases at Lawrence High School, a podcast of Dustin Stumblingbear, Amsterdam allows people to have sex in public parks, ceasefire in Gaza, "poopers" and "pee-ers" time comparison, passing a ceasefire resolution for Gaza, silent Holocaust, Palestinian women having C sections, and National week without driving.

64.    In 2023, the board conducted 34 public meetings.  In 2024 (through 9/10/24), the Board conducted 21 open meetings.  Of those meetings the number of individuals who expressed statements of which the board had no ability to legislate or make ordinances about the topic or subject matter was 105 in 2023 and 33 in 2024.

65.    The City's presiding mayor of the board allowed these statements made by 100 out of 105 individuals (95.2%) in 2023 without any interruption and in 2024 31 out of 33 (93.9% of those individuals.

66.    In 2023, of the 5 interruptions made by the presiding mayor indicating the statements were not germane to the Board's business, 2 individuals were nevertheless permitted to continue speaking on the same subject. In 2024, 2 of 33 speakers were interrupted and neither was permitted to continue speaking on the subject.

67.    Of the 3 statements made by individuals in 2023 that were interrupted by the presiding mayor and not allowed to continue to speak on the subject, one speaker was removed from the meeting while the other two speakers were allowed to remain.  Of the 2 speakers interrupted and not permitted to finish speaking in 2024, one speaker was allowed to remain while the other speaker was ejected from the meeting by the presiding mayor.

68.     The defendant City's current speaking policy hinders Mr. Eravi' ability to speak, to create, to publish, and to distribute speech. These policy restrictions restricts and chills Mr. Eravi' speech by preventing him from obtaining the benefit of public speaking and attending meetings in person.

**II**
**SECOND CAUSE OF ACTION**
**AS APPLIED CHALLENGE SEEKING DECLARATORY AND INJUNCTIVE RELIEF AGAINST THE CITY OF LAWRENCE**
**(42 U.S.C. § 1983)**

69.     Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

70.     The defendant Owens sent a letter to Mr. Eravi on August 21, 2023, claiming that all of the events prior to that date, identified in this Complaint, were the basis for his issuance of a 60 day ban against Mr. Eravi.

71.     Owens claimed he had authority under the City's municipal code 1-305 to ban Mr. Eravi from "attending Lawrence City Commission meetings in person" and the "City Hall property or in the adjacent City Parking Lot and Garage for 30 minutes prior to and after the Lawrence City Commission meetings" for 60 days.

72.     In essence, Owens decreed his own personal restraining order which was unauthorized and provided zero due process when it deprived Mr. Eravi of his rights.

73.     The City Commission never voted in 2025 to give defendant Owens this authority. According to the Commission's Agenda, the Commissioners did not take any affirmative action to authorize the City Manager Owens to send his letter ban to Mr. Eravi. The City Commissioners could not ratify the City Manager Owen's decision to ban Mr. Eravi without an open, affirmative vote on the matter or by taking some action consistent with ratification.

74.     Municipal officers have only such powers and can exercise only such authority as are expressly granted or necessarily to be inferred as incidental to those expressly granted. All powers of the city, not otherwise delegated, are vested in the city council.

75.    The Lawerence City manager Owens has no authority to prohibit individuals from entering onto Lawerence city property particularly when there was no declared emergency.

76.    Nothing in the municipal codes of the City of Lawrence, and particularly 1-305, authorized defendant Owens to ban Mr. Eravi from open meetings or city property and in the manner and procedure Owens utilized.  As applied by defendant Owens, code 1-305 was used to punish Mr. Eravi for his protected speech and viewpoints.

77.    Defendant Owens provided no due process or any hearing – pre-deprivation or post-deprivation-  in which Mr. Eravi could be heard prior to depriving him of being located in public forums and public property.

78.    Mr. Owens permitted Mr. Eravi to "attend meetings virtually" but that he had to comply with Resolution No. 7496.

79.    Mr. Owens made numerous false statements in his letter to justify the ban.

80.    Mr. Eravi presented no safety threat to any defendant and the fact that the Mayor's respective residences are matters of public knowledge or that the press may be present outside those residences is protected activity and not unique to Mr. Eravi.

81.    The press routinely asks questions of public officials even persisting when the public figure says "no comment" or ignores the press.  That too is protected activity.

82.    Banning Mr. Eravi because the reasons stated by Owens which were pretextual and untrue (as all of Mr. Eravi's activities posed no safety threat to anyone and were protected free speech and freedom of the press activities).

83.    The way the City Policies read and the way they have been applied is akin to giving these presiding defendant Mayors a general warrant that leaves to the discretion of the executing officials the decision as to which persons should be arrested," an affront to the Fourth Amendment.

84.    The defendants Littlejohn, Larsen, and Owens have arbitrarily interpreted the City's policies to suppress and punish the content and viewpoint of Mr. Eravi's speech on those dates identified in this Complaint.

85.    There is a credible or objectively justified fear of future enforcement of these policies because there has been a past enforcement of the same statute or provision for the same conduct.

86.    The interpretation of the words and phrases identified in these policies are irreparably clothed in subjectivity and provides no standards to guide a Mayor's or city manager's discretion.

### III
#### THIRD CAUSE OF ACTION
#### (NOTICE AND OPPORTUNITY TO BE HEARD)
#### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AGAINST ALL DEFENDANTS NOT NAMED BRIXIUS, MILLER, & LESLIE
#### (42 U.S.C. § 1983)

87.    Plaintiff Mr. Eravi repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

88.    Each time Mr. Eravi was removed from a meeting or banned by Owens, they each were intended to serve instantly as some kind of restraining injunction as to Mr. Eravi.

89.    Plaintiff Eravi possesses a private liberty interest in lawfully attending City open meetings and in visiting or otherwise being present on city property that is open to the public including City Hall property or the adjacent City Parking Lot and Garage.

90.    Government entities and officials, including Owens, Larsen, Littlejohn, and the City, cannot deprive an individual of a property or liberty interest without due process of law.

91.    Mr. Eravi has a strong First Amendment liberty interest not only in access to the commission meetings and his right to assemble and associate at that location.

92.    According to defendant Owens, and unbeknownst to Mr. Eravi, prior claimed speaking violations at the City's open meetings accumulate in an incremental deleterious fashion which merit, according to defendant Owens, stricter scrutiny and enhanced penalties for a later claimed public comment speech violation.

93.    In fact, there was no authorizing City ordinance, no authorizing written policy or explicit procedure in place when Owens issued his no trespass order against Mr. Eravi.

94.    Each removal from a meeting and defendant Owens' ban did not set out a process for being made aware of or contesting those actions and Mr. Eravi did not have any opportunity to contest those actions.

95.    Any interest each defendant had in instituting and enforcing a no trespass order or directive to be removed from an open meeting did not justify depriving Mr. Eravi of an opportunity to be heard or challenge those bans.

96.    Mr. Eravi presented no emergency or danger to anyone in the events described in this Complaint.

97.    Defendant Sellers, in her official capacity, as well as the individual defendants Owens, Littlejohn, and Larsen, have deprived Mr. Eravi of a property and liberty interest without due process of law.

98.    Procedural due process requires both notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

99.    The removals and no trespass order of Owens was issued pursuant to their unconstitutional policy of retaliating and banning individuals from public forums on public property because of protected speech and without providing for a right to appeal those bans. The City had final policymaking authority as to issuing its unconstitutional no trespass order against Mr. Eravi.

100.    This policy, custom, and practice of using Lawerence City police to enforce board speaking policies improperly criminalizes a purported board requirement. Banning the person for these purported violations of speech from not only the open meeting but the building is irrational, excessive, and provides no due process for these extreme adverse consequences.  As described above, these policies and actions are unconstitutionally void and unenforceable as they violate the First Amendment rights of free speech and petition, and the Fourteenth Amendment's guarantee of due process against vague laws.

101.    Being a traditional public forum regarding the areas Mr. Eravi was removed or banned from, the government's right to restrict expressive activity is sharply circumscribed and must satisfy strict scrutiny. Nothing in these policies or municipal code, or the way they were applied, contained any procedures to provide notice or contest the adverse consequences. It is an affront to due process that these presiding mayors or the city manager would put into place a policy and custom in which public speakers such as Mr. Eravi can be deprived of their First Amendment rights with no opportunity to be heard.

102.    And given the fact that the Commission, with its presiding mayors, empowered presiding mayors to unilaterally exclude and declare a criminal trespass which they knew meted out criminal consequences, this policy and custom increased the risk of retaliatory or ad hoc deprivation.

103.    The same is true for the city manager who unilaterally banned under criminal trespass Mr. Eravi which such rogue and unauthorized actions increase the risk of retaliatory or ad hoc deprivation.

104.    Upon information and belief, the defendants Sellers, Littlejohn, and Larsen were aware of Owen's intent to send his ban letter to Mr. Eravi.

105.    Upon information and belief, the defendants Sellers, Littlejohn, and Larsen were aware of Owen's sending of his ban letter to Mr. Eravi.

106.    Because the policy and issuance of the no trespass order deprived Mr. Eravi of any opportunity to be heard in connection with his ban from public property and forums, those bans, including Owens' no trespass order did not afford sufficient process prior to the deprivation of Mr. Eravi's liberty interest in reporting on Commission events, and in participating in public forums on City property, including open public meetings of the Commission.

107.    Mr. Eravi's right to free expression is objectively chilled by this policy of banning individuals from public forums on City property without an opportunity to be heard.

108.    Mr. Eravi is entitled to nominal damages for the violation of his rights under the Due Process Clause.

109.    Declaratory and injunctive relief is required to protect Mr. Eravi's rights under the Due Process Clause and prevent future enforcement of the District and Board's unconstitutional policy.

## IV
### FOURTH CAUSE OF ACTION
### VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO FREEDOM OF SPEECH
### RETALIATION AND RETALIATORY ARREST
### (U.S.C. § 1983)

110.    Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

111.    To the extent the no trespass order of Owens was based on alleged disruptive behavior or an alleged past violations of the public comment rules which actually do not limit subject matter topics, it is a disproportionate response to Mr. Eravi's protected speech or his conduct alleged by Owens in his letter and is therefore unreasonable.

112.    Defendant Owens' ban was unreasonable because Mr. Eravi has not actually disrupted any City meetings, nor posed any danger or threat to any City employee or Board member.

113.    Mr. Eravi's bans from City meetings and City property was also viewpoint discriminatory because the characterization of Mr. Eravi's speech and conduct is largely based on criticism of City Board members and disfavored viewpoints Mr. Eravi has expressed in his public comments. The ban is also viewpoint discriminatory as it is based at least in part on the discriminatory application of the Board policies to punish speakers who criticize Board members and City employees by name. Due to the repeated removals and no trespass order of Owens, Mr. Eravi was forced to alter his constitutionally protected activities, including participating in the public comment period of Commission meetings, to avoid further adverse actions from the City and these defendants.

114.    Mr. Eravi intends to continue to speak at City open meetings in a passionate manner since the ban has been lifted and to criticize the Commissioners and City when he believes such criticism is merited.

115.    The unconstitutional bans and no trespass order was caused by the Presiding Mayor and City Commissioners final policymaking authority over City property.

116.    Officers Brixius, Leslie, and Miller enforced and carried out, under threat of arrest, or arrest, the silencing or removal of Mr. Eravi from this traditional public forum.

117.    The officer defendants committed their acts including use of force and arrest with careless and reckless disregard or with deliberate indifference to the plaintiff's clearly established constitutional rights of free speech and assembly as protected by the First Amendment of the United States Constitution.

118.    At the time of Mr. Eravi's arrest, or threat of arrest, Mr. Eravi was engaged in constitutionally protected activity.

119.    Defendants knew that Plaintiff's conduct did not violate Kansas state law.

120.    Defendants knew that Plaintiff's conduct was affirmatively protected by federal law.

121.    The defendants decision(s) to threaten arrest, or arrest, and initiate prosecution against the plaintiff came directly in response to and because of Plaintiff's reasonable exercise of his constitutionally protected rights under the First Amendment.

122.    Defendants sought to punish the plaintiff for his many prior actions, including his press publications and negative comments, and his mere presence at meetings and city buildings.  As a result, the plaintiff suffered monetary damages in attorney fees defending against the prosecution, emotional, other economic, and dignitary injuries.

123.    The defendants each viewed Mr. Eravi as someone who emboldened other speakers to express viewpoints the defendants  did not want to hear.

124.    The defendants targeted Mr. Eravi because of his status and viewpoints and used each respective defendant's animosity and predispositions against plaintiff Eravi and his political viewpoints to have the speaking policy arbitrarily interpreted in a discriminatory manner in order to deter expression of certain political positions, then punish and make Mr. Eravi an example to the community.

125.    Barring Mr. Eravi from attending the City's open meetings or even being present in the building is functionally a prior restraint, which is presumptively unconstitutional.    The defendants Littlejohn, Larsen, and Owens preemptively banned Mr. Eravi from speaking at a later public speaking section each evening which is unconstitutional.

126.    The actions of these defendants were unreasonable, not narrowly tailored because prospectively banning a speaker without proof of dangerousness interferes with the speaker's right to interact with elected representatives.

127.    Under Owens, Littlejohn and Larsen's interpretations, Mr. Eravi was and continues to be  subjected to future city property bans including open meeting bans for a purported speech code violation without any evidence of disruption or danger to anyone.  This objectively and unreasonably chills speech.

128.    Mr. Eravi has a First Amendment right to access these open meetings and its general comment forum which is a designated public forum.

129.    The City's comment policies do not define "business of the board" and it provides no authority for a presiding mayor to interrupt a speaker during his allotted time when speaking on topic.

130.    Mr. Eravi engaged in protected speech at all times.  His criticism of the individual defendants or the Commission itself is protected speech.

131.    Nothing in the Policies defines any term. The City provides no examples of guidance or other interpretive tools to assist a presiding mayor in the interpretation of "should" and "shall" or "business of the board."

132.    These speaker policies fail to define key terms, lacks any official guidance, and vests too much discretion in those charged with its application.

133.    These indeterminate prohibitions carry with it the opportunity for abuse particularly when that prohibition has received a virtually open-ended interpretation as demonstrated in the vast topics permitted during the general comment forum.

134.    Both on its face and in its practical operation the City and its presiding mayors' speech policy regime imposed a burden based on the content of Mr. Eravi's speech and his identity as the speaker.

135.   The presiding mayors applied the policies as speech content based in which they each disapproved of the viewpoints and content of Mr. Eravi's speech at these open meetings.

136.   Government regulations which rely on a viewer's subjective interpretation of facts are void for vagueness.

## V

### FIFTH CAUSE OF ACTION
### DECLARATORY RELIEF AS AGAINST ALL DEFENDANTS
### (42 U.S.C. § 1983)

137.   Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

138.   The plaintiff alleges that an actual controversy exists between the parties sufficient to give rise to a need of declaratory judgment under 28 U.S.C. 2201 for all the reasons stated in Counts 1 &2.

139.   The Lawerence City Manager does not have authority to ban individuals from city property and particularly under the facts of this case.  The City Manager is not lord over his fiefdom. Individuals do not need his permission to come onto public property when no emergency exists to exercise First Amendment protected speech which is peaceful, do not constitute fighting words, and do not constitute disorderly conduct.

140.   The presiding mayors continue to misinterpret the general comment speaking policy as limiting topics.  The policy and custom encourages arbitrary enforcement and viewpoint discrimination.

141.   The presiding mayors continue to use Lawrence City police as personal bouncers at its public meetings in which a mere speech code violation becomes criminalized with police enforcement. This is raw intimidation and chilling of First Amendment protected speech knowing that a mere speech code violation can result in immediate removal from the meeting enforced by police.

## VI
### SIXTH CAUSE OF ACTION
### MALICIOUS PROSECUTION UNDER 42 U.S.C. SECTION 1983 AGAINST LITTLEJOHN, BRIXIUS, AND LESLIE

142.   Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

143.   Plaintiff was charged with crimes as previously described.

144.   After arresting the plaintiff, each of the defendant Officers caused a judicial proceeding to be commenced against Mr. Eravi by the filing of reports and information in the City of Lawrence in Douglas County Kansas.

145.   The judicial proceeding was instituted by each of the defendants without probable cause as Mr. Eravi did not commit a crime in the defendants' presence or otherwise.

146.   A reasonable inference from the lack of probable cause from the events and statements made immediately preceding the arrests, during the arrests, and after the arrests, that each of the defendants acted with malice when Mr. Eravi was unlawfully arrested, and initiated the criminal prosecution.

147.   As a result of each of the defendant's respective conduct described in this Complaint, the plaintiff had to endure detention, along with the stress and humiliation of dealing with unfounded criminal prosecution, multiple unfavorable press coverage.

148.   The actions as described herein of these defendants while acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the right to freedom from wrongful prosecution as guaranteed by the Fourth Amendment to the Constitution of the United States of America, made actionable pursuant to 42 U.S.C. § 1983. These deprivations proximately caused Plaintiff's loss of liberty, emotional distress, and other injuries associated with malicious prosecution.

### PRAYERS FOR RELIEF

A.   Declaratory relief as described in all Counts.

B.  An award of actual damages to the plaintiff.  Plaintiff seeks an order awarding compensatory damages against each of the defendants for violation of his state and federal constitutional rights in the amount of $2,000,000.

C.  An award of nominal damages to the plaintiff.

D.  Against each individual defendant in their individual capacity an award of punitive and exemplary damages to the plaintiff.  Punitive damages are appropriate where conduct is shown to be motivated by evil motive or intent or involves reckless or callous indifference which has been alleged as to each individual defendant in this lawsuit.

E.  Cost of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988 and any other relief as the Court deems just and appropriate.

F.  Other relief as the Court deems appropriate.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by Jury on all causes of action.

<u>/s/Linus L. Baker</u>
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:          913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff