IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PHILLIP MICHAEL ERAVI,               )
                                     )
          Plaintiff,                 )
                                     )
vs.                                  )          Case No. 5:25-cv-04074-HLT-ADM
                                     )
CRAIG OWENS, et al                   )
                                     )
          Defendants.                )

**MEMORANDUM IN SUPPORT OF DEFENDANTS LISA LARSON AND AMBER SELLERS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## I.    INTRODUCTION

Plaintiff's Complaint (Doc. 1) does not contain facts that support a cause of action against Defendants Lisa Larson ("Larson") and Amber Sellers ("Sellers") and dismissal is warranted. Although less than clear from his Complaint, Plaintiff appears to have brought suit against the City of Lawrence in suing Sellers in her official capacity. Plaintiff attempts to mount facial and as-applied challenges to the City's public comment policies at City Commission meetings apparently seeking to declare them unconstitutional. Plaintiff also alleges he was deprived of his right to due process and free speech and was retaliated against in violation of his First Amendment Rights.

Defendant Larson is protected by qualified immunity because she did not engage in conduct that violated Plaintiff's constitutional rights and did not violate any right that was clearly established. The City Commission meetings Plaintiff attended are properly characterized as "limited public forums" and the City was allowed to implement policies and procedures to place reasonable restrictions on speech. Plaintiff's constitutional challenges to the City's public comment policies fail as a matter of law because persons of ordinary intelligence would reasonably understand what conduct is prohibited by the policies, and the policies do not encourage arbitrary and discriminatory enforcement. The

policies were applied in a content and viewpoint neutral manner and Plaintiff's as-applied challenge and retaliation claims fail as a matter of law.

For these reasons, detailed below, dismissal is warranted pursuant to Rule 12(b)(6).

## II.    STATEMENT OF FACTS

The following are relevant facts from Plaintiff's Complaint related to Defendants Larson and Sellers. All facts are not restated herein, as they are not necessary to evaluate this Motion to Dismiss. The City On August 1, 2023, then Mayor Larson asked that Plaintiff be removed after he interrupted a commissioner. (Doc. 1, ¶15,16). On August 8, 2023, Plaintiff was ejected from a Commission meeting after Plaintiff stated he was not going to change the tone or nature of his public comments. *Id.* ¶18. As it relates the these meetings, the Complaint alleges that the City's implemented rules and procedures governing General Public Comment during the public comment portion of the meetings are unconstitutionally vague. *Id.* ¶¶42,44. Plaintiff alleges the public comment policies impermissibly restrict his ability to speak and distribute speech. *Id.* ¶68.

On August 21, 2023, following repeated violations of the City's public comment policies, disruptive behavior during commission meetings and safety concerns for the governing body and members of the public, the City restricted him from in-person attendance at City Commission meetings for a period of 60 days. *Id.* ¶¶70,71. The City also restricted him from City Hall and the parking structure adjacent to City Hall for thirty minutes before and after commission meetings. *Id.* Subsequently, Plaintiff again attended City Commission meetings in person. *Id.* ¶22. On September 10, 2024, Plaintiff was warned after being disruptive during his public comments when he said "Since we're in a damn clown show here, how come you can't make your commissioners stay out here?" *Id.* ¶¶ 25-26. Plaintiff was then removed from the meeting after continuing to speak over Mayor Bart Littlejohn. *Id.* ¶27.

## III.    STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss challenges the legal sufficiency of the complaint itself. *See MacArthur v. San Juan Cnty.*, 309 F.3d 1216, 1221 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Two working principles underlie this standard. 'First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.' (citation omitted.) 'Thus, mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action" will not suffice; a plaintiff must offer specific factual allegations to support each claim.'" *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013). Second, a complaint must state a "plausible claim for relief" to survive a motion to dismiss. *Burnett*, 706 F.3d 1236 (quoting *Iqbal*, 556 U.S. at 679). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citation omitted). In making this determination, the Court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

## IV.    ARGUMENTS AND AUTHORITIES.

### A. THE LAWRENCE CITY COMMISSION MEETINGS ARE LIMITED PUBLIC FORUMS AND REASONABLE RESTRICTIONS ON SPEECH ARE PERMISSIBLE.

Plaintiff's claims all arise out of the City's public comment policies. At the motion to dismiss stage, the Court may determine the nature of a public forum by assuming all material facts in the Complaint are true and then decide the type of forum at issue. *Cole v. Goossen*, 402 F. Supp. 3d 992, 1013-1017 (D. Kan. 2019) (at motion to dismiss stage, finding plaintiffs failed to demonstrate Statehouse rotunda is a traditional or designated public forum and failed to persuade the court that they were likely to succeed if the Statehouse rotunda is a limited public forum). The Supreme Court has identified three categories of fora on government property: (1) traditional public fora; (2) designated public fora; and (3) non-public fora. Perry, 460 U.S. at 45-46. A "limited public forum" is a subset of the non-public forum category arising where "'the government allows selective access to some speakers or some types of speech in a nonpublic forum, but does not open the property sufficiently to become a designated public forum.'" *Summum v. City of Ogden*, 297 F. 3d 995, 1002 & n. 4 (10th Cir. 2002).

"The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue." *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 44, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983). "A three-step analysis applies to free speech claims on government property: (1) determine whether the plaintiff's conduct is protected speech; (2) 'identify the nature of the forum, because the extent to which the [defendant] may limit access depends on whether the forum is public or nonpublic'; and (3) determine 'whether the justifications for exclusion from the relevant forum satisfy the requisite standard.'" *Gilmore v. Beveridge*, No. 2:22-cv-02032-HLT-RES, 2022 WL 3139023, at *5 (D. Kan. Aug. 5, 2022) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 [1985]).

Consistent with prior decisions from this Court, the public-comment period of City Commission meetings is a limited public forum. *Spiehs v. Larsen*, No. 23-4107-JAR-BGS, 2025 WL 721946, at

*5 (D. Kan. Mar. 6, 2025) (citing *Hirt v. Unified Sch. Dist. No. 287*, 17-2279, 2018 WL 6326412, at *5 (D. Kan. Dec. 4, 2018) (defining forum as the public-comment period of a school-board meeting); *Griffin v. Bryant*, 30 F. Supp. 3d 1139, 1178 (D.N.M. 2014) (defining forums as the "Governing Body meetings" generally and the "public input portions in particular")). In finding the public-comment period of City Commission meetings a limited public forum the Court in *Spiehs*, concluded that the forum was open for the limited purpose of soliciting public comment on the Commission's conduct of City business. *Spiehs*, 2025 WL 721946, at *5.

Because the forum at issue here is a limited public forum government restriction on speech must only be reasonable in light of the purpose served by the forum and be viewpoint neutral. *Shero v. City of Grove, Okla.*, 510 F.3d 1196,1202 (10th Cir. 2007).

### B.   THE CITY'S POLICIES DO NOT VIOLATE THE FIRSTAMENDMENT.

1.   Plaintiff Fails to Support a Facial Challenge to the City's Public Comment Policy.

"[T]he First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647, 101 S. Ct. 2559, 69 L. Ed. 2d 298 (1981). Instead, "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 2753, 105 L. Ed. 2d 661 (1989).

The public comment policies Plaintiff challenges are content and viewpoint-neutral, narrowly tailored to promote the significant government interest in orderly and efficient meetings, and allow ample alternative channels of communication, which the Tenth Circuit has held meets even the higher "designated forum" standard. *Id.* at 1203; *See also Scroggins v. City of Topeka, Kan.*, 2 F. Supp. 2d

1362, 1373 (D. Kan. 1998) (finding mayor could enforce rules by terminating public comments that were not relevant to business of city council and constituted personal, rude, and potentially slanderous remarks). As found in *Spiehs*, "[t]he prohibition of disruptive, loud, and repetitious speech does not favor any message or viewpoint, but simply dictates *how* messages, regardless of their content, may be expressed. The prohibition of fighting words, slander, and speech invasive of privacy merely sets forth certain categories of speech that the City deemed overly disruptive of meetings—regardless of the content or viewpoint of the speech." 2024 WL 1513669, at *7. *See also Gilmore*, 2022 WL 3139023, at *6 ("limiting topics to those 'germane to the business of the [school] Board' is a reasonable and facially viewpoint-neutral limitation"); *Moms for Liberty - Brevard Cnty., FL v. Brevard Pub. Sch.*, 582 F. Supp. 3d 1214, 1219 (M.D. Fla. 2022), aff'd, No. 22-10297, 2022 WL 17091924 (11th Cir. Nov. 21, 2022), ("On its face, the Policy is both content-and viewpoint-neutral. It allows the Chair to interrupt speech only when it is 'too lengthy, personally directed, abusive, obscene, or irrelevant.'").

In Count I, Plaintiff appears to challenge this Court's decision in *Spiehs v. Larson* as he proffers identical allegations made therein and argues that the City's restrictions on Spiehs' public comments hinders Plaintiff's ability to "speak, to create, to publish, and to distribute speech." (Doc. 1, ¶68). Aside from this improper collateral challenge, Plaintiff offers no facts that support finding the City's public-comment policies anything other than reasonable and viewpoint neutral as decided in *Spiehs*.2025 WL 721946 at *5-6. Plaintiff challenges Resolution 7451, that public comments "should be limited to issues and items germane to the business of the governing body." (Doc. 1, ¶ 42; **Exhibit A**). In *Spiehs*, the Court found that limiting speech to items "germane to the business of the Governing Board" is not an impermissible restriction that leads to arbitrary enforcement; rather, it is a reasonable restriction that allows these public meetings to be conducted in an orderly and efficient manner. This Court should maintain its holding in *Spiehs*, and find that the challenged policy does not allow for

arbitrary enforcement. 2025 WL 721946 at *5.

2.    Plaintiff's As-Applied and Retaliation Claims Fail Because the Restrictions Implemented were Reasonable.

The City "has the constitutional power to impose reasonable restrictions on speech during city council meetings." *Ernst v. City of Bellingham*, 177 F. App'x 652, 654 (9th Cir. 2006) (upholding city ordinance that punished disruptive speech during city council meetings because there is a "significant governmental interest[] of preserving public order and ensuring that government business is accomplished in an efficient manner."); *Shero*, 510 F.3d at 1203 (upholding city council restriction that was "appropriately designed to promote orderly and efficient meetings."). The City also has the power to impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions "are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791. Plaintiff's as-applied challenge and retaliation claim rely on the same operative facts (Doc. 1, Count II, Count IV) and both fail to state a claim.

a.    *Plaintiff's As-Applied Challenge Fails as a Matter of Law.*

Plaintiff's as-applied challenge fails because the policies, as applied to him, was the City exercising its inherent power to reasonably restrict speech. To succeed on a First Amendment as-applied challenge premised on viewpoint discrimination, Plaintiff "'must show that [he was] prevented from speaking while someone espousing another viewpoint was permitted to do so.'" H*armon v. City of Norman, Oklahoma*, 61 F.4th 779, 789 (10th Cir. 2023) (quotation omitted). As previously explained, the public comment policies Plaintiff challenges are content neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward*, 491 U.S. at 791. In *Scroggins*, the Court analyzed the Topeka City Council's Code and found that rules

prohibiting "personal, rude or slanderous remarks," were content-neutral and narrowly tailored to serve a significant government interest, reasoning, "[s]everal courts, including the Supreme Court, have recognized the government's significant interest in conducting orderly, efficient, effective and dignified meetings of its public bodies." 2 F. Supp. 2d at 1372-74. The Complaint fails to set forth facts that Plaintiff was prevented from speaking while someone expressing the opposite viewpoint was allowed to speak.

In addition to the public comment policy, Plaintiff alleges that restricting him from in-person attendance at City Commission meetings and prohibiting him from being on City Hall property or in the adjacent City Parking Lot for 30 minutes prior to and after City Commission meetings was an impermissible restriction as to Plaintiff and/or was in retaliation for his exercise of rights under the First Amendment. (Doc. 1, ¶¶71,76,84,113,124). As discussed in *Spiehs*, the policy restricting public-comment to the "germane business of the Governing Body" is a reasonable restriction on speech tailored to serve the interest of efficiently running a meeting. 2025 WL 721946 at *5. As detailed, *supra*, Plaintiff was not removed from meetings because of constitutionally protected activity, he was removed for violating the reasonable restrictions set forth in the City's policy. This is also true with regard to the restrictions imposed in City Manager, Craig Owens ("Owens") August 21, 2023 letter. The letter is attached hereto as **Exhibit B**, and may properly be considered by the Court because Plaintiff references it in the Complaint (Doc. 1, ¶71) and because it is central to Plaintiff's claims. *Alvarado v. KBOTV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation omitted).

Restricting Plaintiff from in-person attendance at City Commission Meetings and certain public property for a period of time before and after meetings was viewpoint neutral and did not violate the First Amendment. The letter was issued pursuant to Owens' authority as City Manager. (City Code, Ch. 1, Article 3, attached hereto as **Exhibit C**). Section 1-305, vests the City Manager the authority,

with good and lawful cause, "to order any individual not to enter, to leave, or not to return to any property owned or leased by the City of Lawrence." (City Code, Ch. 1, Article 3; 305(C)). The City Manager had the authority to prohibit individuals from entering or returning to City property with good and lawful cause. Good and lawful cause existed to order Plaintiff not to enter or return to specific City property for a period of 60-days based on Plaintiff's repeated violation of the City's public-comment policy and threats made to members of the governing body and the public. (**Exhibit B**). Specifically, Plaintiff's continued disruption of the commission meeting after being removed from the same and threatened not only members of the governing body, but others. Owens was enforcing the City Commission's policies – decorum during city meetings and restricting access to property owned by the City pursuant to his power as the City Manager.

Owens was not discriminating against Plaintiff's viewpoints; rather, he was enforcing a reasonable restriction based on Plaintiff's violations of City policy and to maintain the safety of the governing body and the public. As held in *Ward*, the government may impose reasonable restrictions on the time, place, or manner of protected speech. 452 U.S. at 647. The restrictions on in-person attendance at meetings and access to City Hall and the parking structure for thirty minutes before and after commission meetings were narrowly tailored to serve the significant governmental interest in maintaining the decorum of meetings and the safety of the public.

The restrictions left open ample alternative channels for communication, specifically the ability to participate in City Commission meetings virtually. (**Exhibit B**). The Complaint confirms that the City's policies and temporary restrictions on in-person attendance did not chill Plaintiff from speaking, as he attended subsequent City Commission meetings, specifically on September 10, 2024, and continued to offer public comment. (Doc. 1, ¶22).

        b.       *Plaintiff Fails to Support a Claim for First Amendment Retaliation.*

To state a claim for government retaliation for exercising a First Amendment right, a plaintiff

must show: (a) that he was engaged in constitutionally protected activity; (b) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) the defendant's adverse action was substantially motivated as a response to the plaintiff's protected speech. *Van Deelen v. Johnson*, 497 F.3d 1151, 1155-56 (10th Cir. 2007). Plaintiff was not engaged in constitutionally protected activity, rather he was disrupting commission meetings in violation of the City's policies and engaging in threatening conduct. The letter restricting Plaintiff from in-person attendance at meetings and in certain public areas for a limited period of time was enforcing constitutionally permissible restrictions, not discriminating against the viewpoints of Plaintiff's speech. Plaintiff did not suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity. Plaintiff had available alternative means to communicate with the City Commission through virtual participation in meetings. The restrictions imposed in the August 21, 2023 letter were clearly in response to Plaintiff's conduct, not to protected speech. Similar to *Shero*, Plaintiff's Complaint confirms that he remained free to express his views and communicate with the City Commission. 510 F.3d at 1204 (citation omitted). Plaintiff fails to support a claim for First Amendment retaliation.

Plaintiff fails to state a claim for declaratory and injunctive relief because the City's policies are constitutional and Counts I, II and V should be dismissed.

### D. <u>PLAINTIFF FAILS TO SUPPORT A CLAIM FOR VIOLATION OF DUE PROCESS</u>.

There was no violation of Plaintiff's First Amendment Rights, and therefore no claim for due process violation. As this Court has held, any due process claim Plaintiff asserts based on a First Amendment violation is subsumed into the First Amendment analysis. *Gilmore,* 2022 WL 17082681, at *8 (citing *Hirt,* 2019 WL 1866321, at *9 ("[A]ny due-process claims based on First Amendment violations are subsumed into the First Amendment analysis.")). Because there was no violation of

Plaintiff's First Amendment Rights, Plaintiff cannot maintain a claim for violation of his right to due process and Count III must be dismissed.

### E. QUALIFIED IMMUNITY BARS PLAINTIFF′S CLAIMS AGAINST LARSON.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sanchez v. Guzman*, 105 F.4th 1285, 1292 (10th Cir. 2024), *cert. denied*, 145 S. Ct. 1052 (2025) (internal quotations omitted). When, as here, §1983 defendants assert qualified immunity, "this affirmative defense creates a presumption that [the defendant is] immune from suit." *Id*. (internal quotations omitted).

Once qualified immunity is asserted, "the plaintiff bears the burden to demonstrate that the defendant violated his constitutional rights and that the right was clearly established." *Callahan v. Unified Government of Wyandotte County*, 806 F.3d 1022, 1027 (10th Cir. 2015) (citation omitted). "If the plaintiff fails to satisfy either prong of qualified immunity, his suit fails." *Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023). The Court is not required to address both prongs. *Id.* (citation omitted). To avoid application of qualified immunity, Plaintiff is required to establish that "(1) the defendant officer violated a clearly established constitutional right; and (2) the infringed right at issue was clearly established at the time of the allegedly unlawful activity such that 'every reasonable official would have understood what he was doing' violated the law." *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). This is a "heavy, two-part burden" that the plaintiff must meet. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995)). This burden holds surmountable weight because it is presumed that law enforcement officers "are immune from lawsuits seeking damages for conduct they undertook in the course of performing

their jobs." *Kerns*, 663 F.3d at 1180 (10th Cir. 2011). Failure on either element is fatal to the plaintiff's claims. *Id.*

Plaintiff fails to satisfy either part of the heavy, two-part burden and qualified immunity applies requiring dismissal of Plaintiff's claims against Larson

1.    <u>Defendant Larson Did Not Violate a Constitutional Right.</u>

Larson's alleged actions did not violate Plaintiff's constructional rights. As discussed at length, Larson, as a City Commissioner, had authority to enforce reasonable restrictions on speech to conduct public meetings in an efficient and orderly manner. *See, e.g.*, *Spiehs*, ; *Shero,* 510 F.3d at 1204 (upholding grant of official immunity to city employees for "limiting a plaintiff's speaking time at a city council meeting."). Plaintiff's removal from commission meetings did not violate his first amendment rights[1]. On August 1, 2023, then Mayor Larson asked that Plaintiff be removed after he interrupted a commissioner. (Doc. 1, ¶15,16). On August 8, 2023, Plaintiff was ejected from a Commission meeting after Plaintiff stated he was not going to change the tone or nature of his public comments. *Id.* ¶18. Plaintiff's removal following violation of the City's public-comment policy did not violate his First Amendment rights.

Plaintiff's First Amendment rights were not violated during the September 10, 2024 meeting, when he was removed for being disruptive in violation of the City's public-comment policies and ultimately removed from the meeting. (Doc. 1, ¶24-27). Defendant Littlejohn determined that Plaintiff persistently talking over him was disruptive to the orderly meeting and asked that Plaintiff be removed which does not support a violation of the First Amendment. *See Gilmore*, 2022 WL 3139023, at *8 (reasoning for a school board to function, it must be allowed to keep its meetings in order, which includes allowing the presiding officer "to make judgment calls and 'regulate irrelevant debate'");

---

[1] Plaintiff's allegations surrounding meetings on January 10, 2023, February 21, 2023 and May 16, 2023 are all outside the statute of limitations and should not be considered.

*Jones v. Heyman*, 888 F.2d 1328, 1332 (11th Cir. 1989) (holding no First Amendment violation where mayor's actions to remove plaintiff from meeting "resulted not from disapproval of [plaintiff's] message but from [plaintiff's] disruptive conduct and failure to adhere to the agenda item under discussion"); *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 523 (6th Cir. 2019) ( "It is common sense that a government body should be allowed to remove people who are disrupting a public meeting[.]"). Plaintiff's actions of interrupting and disregarding instructions from the City Commission that disrupted the ability to conduct the public meeting, not any protected speech, led to his removal from Commission meetings.

The Complaint details Plaintiff's continued attendance at and participation in public-comment at the City Commission meetings even after he was asked to leave the building or escorted from the meeting by the Lawrence Police Department. He also attended City Commission meetings after he was given a 60-day restriction on in-person attendance. This demonstrates the policies did not have a chilling effect that prevented people from engaging in a constitutionally protected right. Similar to *Shero,* Plaintiff's Complaint confirms that he remained free to express his views publicly and communicate with the Commission. 510 F.3d at 1204 (citation omitted). Plaintiff's removal from meetings was based on his disruptive conduct and violation of the public comment policies, not for engaging in constitutionally protected activity.

2.      Defendant Larson Did Not Violate A Clearly Established Right.

Even if Plaintiff alleged sufficient facts to support a constitutional violation, Plaintiff fails to establish that Larson violated a right that was "clearly established." The demanding "clearly established" standard protects "'all but the plainly incompetent or those who knowingly violate the law.'" *D.C. v. Wesby*, 583 U.S. 48, 63 (2018) (quotation omitted). "[N]early every right – if viewed at a sufficiently high level of generality – is clearly established." *Wood v. Welch*, No. 22-2279-DDC, 2024 WL 2880405, *6 (D. Kan. 2024). To determine whether the right was clearly established, the

court must engage in a 'narrowly tailored and context-specific exercise.' *Id.* (citations omitted). To be clearly established, the contours of the right must be sufficiently clear so the official would know what he or she was doing violated the right. *Martley v. Basehor, Kansas, City of,* 537 F. Supp. 4d 1260, 1267 (D. Kan. 2021) (internal citation omitted). To place the constitutional question beyond debate, the law must be "black and white." *Wood,* 2024 WL 2880405 at \*9.

There is no Tenth Circuit or Supreme Court case, or clear authority from other courts that would place Defendant Larson on notice that any of her actions, enforcing the City's policies on public comment, violated a clearly established constitutional right. Even if some portion of the City's public-comment policy or action taken under the policy was found unconstitutional (which is denied), this does not preclude application of qualified immunity. *Frasier*, 992 F.3d at 1022 ("'If judges [] disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.'"); *MacQuigg v. Albuquerque Pub. Sch. Bd. of Educ.*, No. CV 12-1137 MCA/KBM, 2015 WL 13659218, at \*5 (D.N.M. Apr. 6, 2015) (recognizing holding personal attack policies viewpoint based arguably conflicts with Justice O'Connor's plurality opinion in *Boos v. Barry*, 485 U.S. 312 (1988) and discussing cases finding policies against personal attacks content-neutral, including District of Kansas case).

Decisions from this Court demonstrate that Larson's enforcement of public comment policies in a limited public forum does not violate a plaintiff's right to free speech. *Spiehs*, 2024 WL 5107274 at \*6. Because there is no Tenth Circuit or Supreme Court case, or clear authority from other courts, that places Defendant Larson's conduct "beyond debate," *Thompson v. Ragland*, 23 F.4th 1252, 1255 (10th Cir. 2022), Larson is entitled to qualified immunity. "If qualified immunity is to mean anything, it must mean that public employees who are just doing their jobs are generally immune from suit." *Lewis v. Tripp*, 604 F.3d 1221, 1230 (10th Cir. 2010). Plaintiff fails to satisfy either prong of the qualified immunity test and Defendant Larson must be dismissed.

## IV.    CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief can be granted against the City of

Lawrence, Kansas through Sellers or Defendant Larson and dismissal with prejudice is warranted.

Respectfully submitted,

HINKLE LAW FIRM <u>LLC</u>
8711 Penrose Lane, Suite 400
Lenexa, Kansas 66219-8197
913-345-9205/ FAX: 913-345-4832

By:___/s/Michelle R. Stewart_____
     Michelle R. Stewart, <u>mstewart@hinklaw.com</u>  #19260

ATTORNEYS FOR DEFENDANTS
 LISA LARSON AND AMBER SELLERS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 9th day of September, 2025, the foregoing *Memorandum In Support of Defendants Larson and Seller's Motion To Dismiss Plaintiff's Complaint* was filed electronically with the Clerk of the US District Court for the District of Kansas; and a copy was served via ECF electronic notification and via email upon the following:

Linus L. Baker, #18197 (<u>linusbaker@prodigy.net</u>)
6732 West 185th Terrace
Stilwell, KS 66085-8922
913-486-3913 / Fax 913-232-8734
*Attorneys for Plaintiff*

_____/s/  Michelle R. Stewart_____
ATTORNEYS FOR DEFENDANTS