IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Phillip Michael Eravi

       Plaintiff    Case No. 5:25-cv-04074-HLT-ADM

v.

              **OPPOSITION TO DISMISS**

Craig Owens *et al*

       Defendants

### INTRODUCTION

This case is not about preserving order in public meetings. It is about government officials who tolerated nearly all speech at Lawrence City Commission meetings but selectively silenced a critic. The plaintiff spoke on topic. Plaintiff was removed, threatened with arrest, and banned without process—while others were permitted to speak on all topics and then, as alleged by defendants, purportedly stray off agenda topics freely. Either way, that is viewpoint discrimination, retaliation, and punishment without due process—violations that have long been clearly established.

Defendant asks this Court to dismiss these claims at the pleading stage. But under Rule 12(b)(6), the Court must accept Plaintiff's allegations as true and draw all inferences in his favor. Those allegations plausibly show constitutional violations. And as Judge Melgren recently held in *Schmidt v. Huff*, No. 25-CV-2081-EFM-GEB, 2025 WL 901335 (D. Kan. August14, 2025) (*see* attached), similar claims involving public comment bans and selective enforcement are not subject to dismissal where factual disputes remain.

1

Judge Robinson likewise ruled in *Spiehs v. Armbrister*, No. 24-4005-JAR-BGS, 2025 WL 548423 (D. Kan. Feb. 19, 2025) (see attached), that it was unclear how a meeting could be disrupted during the allotted three minutes of speaking time:

> Given that members of the public are entitled to three uninterrupted minutes during the public-comment period, it is not clear—based on the allegations—that such speech causes disruption or disorder when the Commission has already set aside dedicated time for the individual speakers.

This framing directly supports Plaintiff's claims.

## LEGAL STANDARD

A complaint survives when it pleads sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept well-pled facts as true and construe them in Plaintiff's favor. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

## ARGUMENT

### I. AS-APPLIED FIRST AMENDMENT CLAIM (VIEWPOINT DISCRIMINATION)

Defendant argues Plaintiff was removed for disruption, not viewpoint. But the Complaint alleges that plaintiff spoke on topic. And even accepting defendant's interpretation of "business of the board" as being different, the facts show 95% of a vast array of comments that the Board had no legislative authority were tolerated, while Plaintiff alone was silenced for criticizing officials (¶¶42–47, 64–67). That is textbook viewpoint discrimination.

### A. FORUM PRACTICE CONTROLS

Although Defendant labels the meetings a limited public forum, actual practice governs. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983);

*Cajune v. Independent School District* 194, 105 F.4th 1070, 1083 (8th Cir. 2024) ("As the Ninth Circuit explained in *Hopper*, the government's designation of a forum is not dispositive. Courts must examine how the forum is actually used and whether the government has consistently enforced its stated boundaries"); *Hopper v. City of Pasco*, 241 F.3d 1067, 1075 (9th Cir. 2001). The Commission routinely allowed proclamations, commendations, and commentary on national and personal issues (¶¶56–60). If proclamations are "business of the board," then "business" is functionally unlimited.

### B. ENFORCEMENT WAS SUBJECTIVE AND BIASED

Each mayor admitted "business" means something different (¶¶49–51). The rule was enforced arbitrarily, with supportive speakers indulged and critics removed. That violates *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1888 (2018), which struck down vague standards even in limited forums.

### C. ROBINSON'S AND MELGREN'S REASONING APPLY

In *Spiehs*, Judge Robinson held that speech delivered during a speaker's allotted three-minute window is presumptively protected and not inherently disruptive. Plaintiff's remarks occurred within that window. The City's removal and subsequent bans were not based on disruption, but on disapproval of viewpoint.

In *Schmidt*, Judge Melgren denied dismissal of similar claims where a speaker was banned for critical speech. He held that "selective enforcement of decorum rules based on viewpoint is actionable," and that factual disputes about disruption vs. criticism preclude dismissal. The same logic applies here.

## II. RETALIATION

Defendant Larsen argues retaliation fails because Plaintiff continued to attend and speak. That misstates the standard. Retaliation is assessed under the objective chilling test: would the government's actions chill a person of ordinary firmness? *Van Deelen v. Johnson*, 497 F.3d 1151, 1157 (10th Cir. 2007).

Plaintiff was:

- Silenced and removed by police (¶¶42–47, 56–58)
- Banned for 60 days without process (¶¶59–61, 70–73)
- Criminally charged, then cleared for lack of probable cause (¶¶71–73)

These actions would chill most citizens. In *Schmidt*, Melgren found that bans and threats of trespass were sufficient to plead retaliation—even where the plaintiff continued speaking. Robinson's ruling in *Spiehs* reinforces that speech during allotted time is protected and not inherently disruptive. Together, these decisions support survival of this claim.

## III. PROCEDURAL DUE PROCESS (OWENS' BAN)

City Manager Owens imposed a 60-day ban without ordinance authority, notice, or hearing (¶¶72–75). That violates procedural due process. The Constitution requires notice and hearing before depriving liberty interests. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Exclusion from public meetings implicates both liberty and First Amendment rights. *Acosta v. City of Costa Mesa*, 718 F.3d 800, 827 (9th Cir. 2013); *Vollmecke v. Independence School District,* No. 4:23-cv-00644 (W.D. Mo. filed Sept. 15, 2023). Judge Melgren in *Schmidt* emphasized that bans

4

imposed without process—even for short durations—are constitutionally suspect. Owens' conduct is more extreme and warrants discovery.

## IV. QUALIFIED IMMUNITY

Defendant invokes qualified immunity. But immunity is inappropriate at this stage.  The Tenth Circuit in *Baca v. Cosper*, 128 F.4th 1319, 1328 n.5 (10th Cir. 2025), held that courts must "conduct [their] clearly established analysis with full knowledge of settled case law," including persuasive decisions not cited by the parties. Judge Melgren applied *Baca* in *Schmidt* to deny immunity where:

- The plaintiff was banned for critical speech
- No safety justification was offered
- The enforcement pattern showed viewpoint bias

Judge Robinson's ruling in *Spiehs v. Armbrister,* No. 5:24-cv-04005-JAR-BGS (D. Kan. Feb. 19, 2025), denied qualified immunity to school board officials who removed a speaker during public comment based on alleged disruption. The court rejected that justification, holding that the plaintiff's remarks were protected speech and that the officials had "fair warning" under *Van Deelen, Ison*, and *Schmidt* that viewpoint-based exclusion from a public forum violates the First Amendment. Similarly, Defendants here are alleged to have silenced and excluded a known critic while tolerating supportive speech—conduct that squarely violates clearly established law. The intra-district consistency among Spiehs, Schmidt, and this case confirms that by 2022, any reasonable Kansas official would have understood that retaliatory silencing of dissent during a public-comment period was unconstitutional. Where speech occurs within a speaker's allotted time and does not materially disrupt

5

the proceeding, officials who punish it act outside the protection of qualified immunity.

### V. FACIAL CHALLENGE

The City's rule limiting public comment to "business of the board" is facially unconstitutional because it is impermissibly vague and invites arbitrary enforcement. The rule requires speakers to perform a holistic and retrospective analysis of what topics have previously been tolerated—an impossible standard for the average citizen.  Plaintiff's Complaint identifies a wide range of topics that were routinely permitted during public comment, including proclamations, commendations, and commentary on national and personal issues (¶¶56–60). These topics were treated as "business of the board" in practice, yet the presiding mayors interpreted the rule differently and inconsistently (¶¶49–51). If the rule admits no room for disagreement, then Plaintiff's understanding—based on observed practice—must prevail. If disagreement is possible, then the rule is vague.  The Supreme Court has long held that vague speech restrictions violate the First Amendment, especially in public or limited public forums. *See Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1888 (2018) ("The lack of objective standards... invites arbitrary enforcement."). The Tenth Circuit has likewise emphasized that vague decorum rules cannot be enforced in ways that chill protected speech. *See Van Deelen v. Johnson*, 497 F.3d 1151, 1157 (10th Cir. 2007).

## VI. EQUAL PROTECTION

Plaintiff also alleges unequal treatment: nearly all non-germane speakers were tolerated except him (¶¶64–67). This differential treatment lacked any rational basis and favored supportive speakers (¶¶63–67). Defendant argues that Plaintiff's Equal Protection claim is redundant of his First Amendment claims. *See SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012). But *SECSYS* holds only that Equal Protection cannot displace a more specific constitutional guarantee. Plaintiff does not seek to displace the First Amendment; he asserts Equal Protection as an alternative theory because Defendant's conduct was not only viewpoint-based but also irrational and arbitrary. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Judge Melgren recently recognized in *Schmidt v. Huff* that such claims may proceed in tandem at the pleading stage. Especially here—where ninety-five percent of other off-topic speakers were tolerated and Plaintiff alone was silenced—Equal Protection provides an additional, plausible ground for relief.

## VII. THE REAL DISRUPTION WAS GOVERNMENTAL, NOT EXPRESSIVE

Defendant claims Plaintiff disrupted the meeting. But the Complaint alleges that Plaintiff spoke during his allotted three-minute window and was repeatedly interrupted by the presiding officer before his time expired (¶¶42–47, 56–58). That flips the disruption narrative.

### A. STRUCTURE OF PUBLIC COMMENT

The Commission sets aside time for public comment. Once the floor is yielded, the speaker is entitled to three uninterrupted minutes. Judge Robinson affirmed this

structure in *Spiehs v. Armbrister* at \*6. ("three uninterrupted minutes during the public-comment period").

## B. WHO ACTUALLY DISRUPTED EACH MEETING?

Plaintiff alleges that the presiding officer repeatedly interrupted him mid-speech, cutting off criticism before his time expired. Those interruptions—not Plaintiff's words—halted the normal flow of the meeting. By definition, when an official cuts in prematurely, they—not the speaker—are the source of disruption. This mirrors the Sixth Circuit's reasoning in *Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021), where the court held that: "The disruption was not the speaker's criticism—it was the board's censorship of it." And it aligns with the Tenth Circuit's holding in *Van Deelen v. Johnson*, 497 F.3d 1151, 1157 (10th Cir. 2007), that harsh criticism of public officials is protected speech. Retaliation against such speech—not the speech itself—is the constitutional violation.

## C. LEGAL AND LOGICAL CONSEQUENCES

If offensive speech within allotted time is deemed "disruptive," then speech is improperly converted to conduct while the rule becomes standardless and viewpoint-based. It converts pure protected speech to equal conduct or disruptive conduct which is not permissible. Defendant's argument purports to use speech as a proxy for conduct. The Court will not find any published case law after *Reed v. Town of Gilbert,* 576 U.S. 155 (2015) in which words equate to conduct and allows the government to regulate it as such. Courts have "already rejected the practice of relabeling controversial speech as conduct." *Otto v. City of Boca Raton*, 981 F.3d 854, 861 (11th

Cir. 2020). If presiding officers can interrupt speakers at will, then the City itself becomes the disruptor of its own meetings.

That is precisely why Judge Robinson, Judge Melgren, and the Supreme Court in *Minnesota Voters Alliance v. Mansky*, 138 S. Ct. 1876, 1888 (2018), have emphasized that vague decorum rules cannot give officials unfettered discretion to silence speech they dislike.

## VIII. MUNICIPAL LIABILITY REMAINS PROPERLY PLED AND PROCEDURALLY UNCHALLENGED

Although Defendant Sellers filed her motion in an official capacity, the City of Lawrence has not substantively moved to dismiss the claims against it. The motion does not address municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), nor does it challenge the existence of a policy, custom, or practice that caused the constitutional violations alleged. As the Supreme Court held in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), "municipal liability under § 1983 attaches where— and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483–84. Owens' issuance of a 60-day exclusion letter—without ordinance authority, hearing, or neutral enforcement criteria—was a discretionary act made in his capacity as the defendants claim City Manager Owens is vested by charter with final authority over enforcement and administrative discipline at Commission meetings. If true, his decision to exclude Plaintiff therefore represents official City policy under *Monell* and *Pembaur*. Under *Pembaur*, such a single decision by a final policymaker is sufficient to establish

9

municipal liability. Additionally, Plaintiff alleges that the City failed to train or supervise officials on First Amendment boundaries and procedural safeguards. As the Supreme Court held in *City of Canton v. Harris,* 489 U.S. 378, 388 (1989), "inadequacy of training may serve as the basis for § 1983 liability where the failure to train amounts to deliberate indifference." The City's pattern of silencing dissenting speakers while tolerating supportive ones, coupled with Owens' exclusion without ordinance authority, plausibly supports a failure-to-train theory under *Monell.*

Defendants attached three exhibits—Resolution 7451, the August 21, 2023 letter from City Manager Owens, and a portion of the City Code. The letter and resolution are referenced in the Complaint and may be considered under Rule 12(b)(6), but only for their content—not to resolve disputed facts. Plaintiff cited Owens' letter to show that the exclusion was imposed without ordinance authority, and referenced the "business of the board" standard originating in Resolution 7451 to demonstrate vagueness and inconsistent enforcement. These documents do not rebut Plaintiff's allegations—they reinforce them.

The excerpt from the City Code, however, is neither referenced in the Complaint nor central to Plaintiff's claims. It is not referenced in the Complaint. Its inclusion invites factual dispute and interpretive conflict. If the Court considers this material for its truth or to resolve contested meaning, it must convert the motion to one for summary judgment under Rule 12(d). Plaintiff respectfully objects to its use at this stage.

Even if all three documents are considered, they do not undermine Plaintiff's core allegations:

- That the City tolerated non-germane speech from supportive speakers while silencing critics (¶¶56–60, 64–67);

- That Owens imposed a 60-day ban without ordinance authority, notice, or hearing (¶¶70–75);

- That the City failed to train or supervise officials on First Amendment boundaries and procedural safeguards.

These allegations plausibly support municipal liability under *Monell*, and the City's failure to challenge them confirms that Counts III (due process), IV (retaliation), and V (declaratory relief) remain live against the municipality. Sellers' motion, styled in her official capacity, does not extinguish these claims—particularly where the City's own documents reinforce discretionary enforcement and viewpoint-based silencing.

**CONCLUSION**

Plaintiff has plausibly pled each claim. Count I (facial challenge) has merit. Count II (as-applied viewpoint discrimination) survives under *Spiehs* and *Schmidt*. Count III (due process) is supported by Owens' lawless ban. Count IV (retaliation) meets the objective chill standard and mirrors Melgren's findings. Count V (declaratory relief) remains appropriate. Count VI (equal protection) is pled in the alternative and supported by *Schmidt*, *Olech*, and *SECSYS*. Count VII reframes the

11

disruption narrative and confirms that the City—not Plaintiff—interrupted the meeting.

Defendant's motion ignores key allegations and mischaracterizes the forum, the enforcement pattern, and the procedural void. Under *Baca*, *Spiehs*, *Schmidt*, *SECSYS*, *Ison*, and *Van Deelen*, this Court must consider the full weight of settled law—which confirms that bans without disruption or process violate clearly established constitutional rights.   Defendant Larsen's motion fails to address core allegations and controlling precedent. It ignores that Plaintiff was interrupted mid-speech during his allotted time, mischaracterizes the forum's actual practice, and barely engages the procedural void surrounding Owens' ban. It applies a generic qualified immunity defense without distinguishing roles or acknowledging intra-district rulings like *Schmidt*. And while citing *SECSYS*, it overlooks its limitation—Equal Protection claims pled in the alternative remain viable, especially under *Olech* and *Schmidt*. These gaps are not minor. They go to the heart of Plaintiff's claims and confirm that dismissal is unwarranted.

The motion to dismiss should be denied in its entirety.

CERTIFICATE OF SERVICE

On this 15th day of September, 2025, the above document was filed with the Court's CM-ECF system which will provide notice to all counsel of record.
/s/Linus L. Baker

/s/Linus L. Baker
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:          913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff

12