IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PHILLIP MICHAEL ERAVI,

Plaintiff,

v.

CRAIG OWENS, et al.,

Defendants.

Case No. 5:25-cv-04074-HLT-ADM

MEMORANDUM AND ORDER

Plaintiff Phillip Michael Eravi is a "citizen journalist" who has developed a contentious relationship with the Lawrence City Commission. City officials have asked him to leave meetings several times and once banned him from meetings and certain city property for 60 days. On another occasion, he was charged with trespass, but the charges were later dropped. These incidents are the basis for this lawsuit. Defendants are Craig Owens, Lisa Larsen, Bart Littlejohn, Anthony Brixius, Matthew Leslie, James Miller, and Amber Sellers. All are city officials or officers sued in their individual capacities, except Sellers who is only sued in her official capacity. Defendants move to dismiss all claims. Docs. 8 and 21.

The complaint in this case is difficult to follow because of extraneous and irrelevant facts, confusing allegations, and poorly defined claims. It does a disservice to the important rights Plaintiff ostensibly seeks to vindicate. The motions to dismiss are equally challenging because they largely attack concepts, not the specific claims, which exacerbates pleading deficiencies and makes resolution of the motions more difficult.

The Court grants in part and denies in part the motions. Count 1 (facial First Amendment challenge) is dismissed with prejudice. Count 2 (as-applied First Amendment challenge) is dismissed without prejudice for lack of subject-matter jurisdiction. Count 3 (procedural due

process) survives. Count 4 (First Amendment retaliation and retaliatory arrest) is dismissed with prejudice against all Defendants except a First Amendment retaliation claim against Owens based on the August 2023 letter ban. Count 5 (declaratory relief) is dismissed without prejudice for lack of subject-matter jurisdiction. And Count 6 (malicious prosecution) is dismissed with prejudice.

Plaintiff's surviving claims are (1) a First Amendment retaliation claim against Owens in his individual capacity based on the August 2023 letter ban and (2) a procedural due process claim against Sellers in her official capacity and against Owens, Larsen, and Littlejohn in their individual capacities. All other defendants are dismissed from the case.

## I.    BACKGROUND[1]

### A.    Parties

Plaintiff is a citizen journalist. Doc. 1 at ¶ 1. Owens is the City Manager of Lawrence. *Id.* ¶ 34. Larsen is a City Commissioner. *Id.* ¶ 35. Littlejohn was the Mayor of Lawrence. *Id.* ¶ 36. Brixius, Leslie, and Miller are officers employed by Lawrence. *Id.* ¶¶ 37-39. All these defendants are sued in their individual capacities. Sellers is a City Commissioner and is sued in her official capacity only.

### B.    Earlier Incidents[2]

On January 10, 2023, Plaintiff attended a City Commission meeting to speak about excessive force by police. *Id.* ¶ 2. Plaintiff referred to police as "Coward ass Bitches" who lied about the incident. *Id.* ¶ 4. Larsen interrupted Plaintiff after his three minutes of speaking time had

---

[1]    The following facts are taken from the complaint and are accepted as true for purposes of evaluating the motions to dismiss.

[2]    Many of these incidents occurred more than two years before Plaintiff filed his complaint. Defendants assert they are outside the statute of limitations. Plaintiff does not meaningfully respond to this argument and, regardless, it appears that he only brings claims based on the August 2023 letter ban and on the September 2024 incident. Defendants do not dispute these two incidents fall within the statute of limitations.

expired and said "Michael, you're done." *Id.* ¶ 5. Plaintiff continued talking. *Id.* Larsen asked a police officer to remove Plaintiff from the meeting, which the officer did. *Id.* ¶ 6.

On February 21, 2023, Plaintiff attended a meeting. *Id.* ¶ 7. He stated that the City Commission "didn't want the public knowing the secret action points." *Id.* ¶ 8. Larsen was offended and asked for Plaintiff's removal. *Id.* Plaintiff left under threat of arrest. *Id.*

On May 16, 2023, Plaintiff attended a meeting and spoke on matters germane to the business of the City Commission. *Id.* ¶¶ 9-10. At one point, Sellers called a point of order. *Id.* ¶ 11. Plaintiff asked Larsen to explain how he wasn't speaking on the business of the City Commission. *Id.* After some additional exchange and Sellers repeatedly calling a point of order, Larsen asked an officer to remove Plaintiff. *Id.* ¶ 13.

On August 1, 2023, Plaintiff attended a meeting. *Id.* ¶ 14. A City Commissioner said that nothing in the Kansas constitution requires the City Commission to "allow the public to remove things from the consent." *Id.* ¶ 15. Plaintiff said his words were being misconstrued, which "was cheap," and he then said "[t]hrow me out." *Id.* Larsen said she wanted Plaintiff removed and called for an officer. *Id.* ¶ 16. Plaintiff left under threat of arrest. *Id.*

On August 8, 2023, Plaintiff attended a meeting. *Id.* ¶ 17. Larsen said that there were concerns about the tone of the general public comments. *Id.* ¶ 18. Plaintiff said, "this is not going to change tone and nature ma'am." *Id.* Larsen ejected Plaintiff from the meeting. *Id.* Miller confronted Plaintiff and made him leave the building. *Id.* ¶ 19. After waiting outside the meeting to interview Littlejohn, Plaintiff asked if he wanted to comment on Larsen's "tone and nature" statement, and Littlejohn said "nope." *Id.* ¶ 20. Plaintiff asked, "do you see that is a problem?" *Id.* Plaintiff tried to ask others about the comment, and they wouldn't respond. *Id.* ¶ 21.

### C.    August 2023 Letter Ban

On August 21, 2023, Owens sent Plaintiff a letter imposing a 60-day ban for Plaintiff based on the prior incidents (some of those detailed above). *Id.* ¶ 70. Owens claimed he had authority under the municipal code to ban Plaintiff from "attending Lawrence City Commission meetings in person" and from being on "City Hall property or in the adjacent City Parking Lot and Garage for 30 minutes prior to and after the Lawrence City Commission meetings" for 60 days. *Id.* ¶ 71.

The City Commission never voted to give Owens this authority. *Id.* ¶ 73. As City Manager, Owens had no authority to prohibit individuals from entering city property. *Id.* ¶ 75. Nothing in the municipal code authorized Owens to ban Plaintiff from meetings or city property. *Id.* ¶ 76. Owens issued the letter to punish Plaintiff for his speech and viewpoints. *Id.* Owens did not give Plaintiff any due process or hearing, either before or after issuing the letter. *Id.* ¶ 77. Owens did state that Plaintiff could attend meetings virtually. *Id.* ¶ 78.

The letter contained false statements to justify the ban. *Id.* ¶ 79. Plaintiff maintains he never presented a safety threat. *Id.* ¶ 80. Plaintiff also contends that his actions were protected free speech or were press activities. *Id.* ¶ 82.

### D.    September 2024 Removal

On September 10, 2024, Plaintiff attended a meeting. *Id.* ¶ 22. When Plaintiff went up to speak, Sellers walked out of the meeting. *Id.* ¶ 23. When Plaintiff spoke, others in the crowd were having "side conversations." *Id.* ¶ 24. Littlejohn interrupted Plaintiff to tell the crowd to not have "side conversations" while others were speaking. *Id.* Plaintiff asked, "does that include you[?] Can you hold all your damn side conversations while I'm talking tonight Bart? Since we are in a damn clown show here, how come you can't make your commissioners stay out here? You're not a strong mayor Bart." *Id.* ¶ 25. Littlejohn accused Plaintiff of being disruptive, and Plaintiff said

"[s]top interrupting me." *Id.* ¶ 26. Littlejohn gave Plaintiff a warning. *Id.* Plaintiff then stated "I am not being disruptive. I'm giving my speech." *Id.* ¶ 27. Littlejohn continued his interruption during Plaintiff's allotted speaking time. *Id.*

Littlejohn then asked that Plaintiff be removed. *Id.* Brixius confronted Plaintiff to force him to leave. *Id.* ¶ 28. Plaintiff would not leave unless it was under threat of arrest. *Id.* ¶ 29. Brixius said Plaintiff was free to leave, but he was going to ask Littlejohn if it was going to be a criminal trespass. *Id.* Plaintiff did not leave, and Brixius confirmed Littlejohn wanted Plaintiff to leave, saying "You're in control because you're the mayor." *Id.* Littlejohn said he wanted Plaintiff to leave because Plaintiff was disrupting the meeting, was being disorderly, and had continued after being warned. *Id.* Brixius then told Plaintiff he had "been criminal trespassed, you must now leave." *Id.*

Brixius escorted Plaintiff out, saying he was not free to go and was being detained. *Id.* Brixius then clarified that Plaintiff was not being arrested and was not going to jail but he would get a notice to appear. *Id.* Brixius then recounted to Plaintiff that Littlejohn determined Plaintiff was being disruptive and asked him to leave. *Id.* Brixius stated that he had also asked Plaintiff to leave, but Plaintiff did not. *Id.* Plaintiff was charged with criminal trespass, but the prosecutor later dismissed the case. *Id.* ¶ 32.[3]

### E.    Public Comment Policy

The City has two public comment sections in its policies: General Public Comment and Public Comment on Agenda Items. *Id.* ¶ 42. General Public Comment statements are "limited to three minutes and <u>should</u> be limited to issues and items germane to the business of the Governing body." *Id.* (emphasis added) The Public Comment on Agenda Items permits public comment on

---

[3]    Leslie was present on September 10. He later had a call with another officer about the incident. Doc. 1 at ¶ 31.

agenda items but states that "[p]ublic comment on specific items <u>shall</u> be germane to the item being discussed. *Id.* ¶ 44 (emphasis added). Larsen has said that "what is considered a germane topic is very subjective." *Id.* ¶ 50. The City Commission is given wide latitude. *Id.* Interpretations are up to each mayor. *Id.* ¶ 51.

The City Commission often solicits suggestions for official proclamations. *Id.* ¶ 56. Proclamations are part of the business of the City Commission and appear on the agenda. *Id.* Larsen said there has never been a limitation on proclamation topics, and the topics considered have been wide-ranging. *Id.* ¶¶ 57-60.

At many of the meetings held in 2023, individuals expressed statements on topics on which the City Commission has no ability to legislate. *Id.* ¶ 64. In 2023, there were five interruptions that statements were not germane to the City Commission's business. *Id.* ¶ 66. Some speakers were allowed to keep speaking, but others were not. *Id.*

## II.    STANDARD

A complaint survives a Rule 12(b)(6) motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). A claim is plausible if there is sufficient factual content to allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation and citation omitted). A court must accept as true all well-pleaded allegations in the complaint, but it does not accept legal conclusions or conclusory statements. *Id.* at 678-79.

### III.    ANALYSIS

### A.    Count 1 – Facial Challenge to Public-Comment Policy

Count 1 is a facial challenge to the public-comment policy asserted against Sellers in her official capacity. Plaintiff claims the policy is facially unconstitutional because it is unclear and invites arbitrary enforcement.

The extent to which the government may regulate speech on its property depends on the nature of the forum.[4] But a regulation cannot be impermissibly vague. A regulation is vague on its face if it (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) "it authorizes or even encourages arbitrary and discriminatory enforcement." *Spiehs v. Larsen*, 728 F. Supp. 3d 1190, 1204 (D. Kan. 2024) (internal quotation and citation omitted). A rule limiting speech cannot be so indefinite as to be no rule at all. *See id.* To succeed on a vagueness challenge, a plaintiff must show the potential chilling effect on speech is "both real and substantial." *Id.* (internal quotation and citation omitted).

Here, Plaintiff targets the public-comment policy because it states individuals "should" limit their comments to "issues and items germane" to the City Commission's business. Plaintiff argues this is unconstitutionally vague because the City Commission has historically allowed an unlimited range of topics and because it allows for discretion in enforcing the policy.

Plaintiff fails to state a vagueness challenge to the public-comment policy. At most, Plaintiff's complaint alleges that the breadth of the City Commission's <u>business</u> is wide. *See, e.g.*, Doc. 1 at ¶ 60. But that does not mean the <u>policy</u> limiting comments to matters germane to that business is unconstitutionally vague. People of ordinary intelligence would understand that their

---

4    The parties dispute what type of forum exists in the public-comment portion of City Commission meetings. Based on the arguments presented, the Court does not need to resolve that question at this stage.

comments should be relevant to the City Commission's business even where that business is wide-ranging. In *Spiehs*, Judge Robinson considered the same arguments about the same City Commission policy and concluded that speakers "understood germane to mean 'relevant' or 'pertinent' to city business, and that they understood [the city's business] to include asking the City Commission to take some kind of action." 728 F. Supp. 3d at 1204-05. This Court has also previously rejected a vagueness challenge to similar policies. *See Gilmore v. Beveridge*, 2022 WL 3139023, at *7-8 (D. Kan. 2022). Simply listing the wide range of topics addressed at meetings, as Plaintiff does, does not demonstrate that speakers failed to understand what was permissible and what was not.

Nor is it unconstitutional that the policy leaves room for discretion. "[T]he presence of discretion alone cannot invalidate a policy on vagueness grounds." *Spiehs*, 728 F. Supp. 3d at 1205.[5] A degree of discretion is necessary to keep meetings in order. *See Gilmore*, 2022 WL 3139023, at *8. This is not a case where arbitrary or discriminatory enforcement is authorized by the policy. *See id.* (explaining that discretion is permissible where the policy measures what is allowed by an objective criteria like relevance to the business of the entity).

Plaintiff has failed to plausibly allege that the policy is unconstitutionally vague. The Court dismisses Count 1 with prejudice.

### B.    Count 2 – As Applied First Amendment Challenge

Count 2 is a claim for declaratory and injunctive relief against Sellers in her official capacity arising out of Plaintiff's temporary ban in 2023. Plaintiff alleges Owens issued this ban without authority under the city code and without authorization from the City Commission. Doc.

---

[5]   Plaintiff also highlights the use of the word "should" in the policy, instead of "shall," which is used elsewhere. It's unclear what significance this has. *See Spiehs*, 728 F. Supp. 3d at 1206 ("The Court need not accept Plaintiff's legal conclusion that the "shall" and "should" lead to arbitrary enforcement, given that Plaintiff provides no supportive reasoning for his argument.").

1 at ¶¶ 71-76. Plaintiff contends it was as if "Owens decreed his own personal restraining order." *Id.* ¶ 72. Defendants argue this claim fails because restricting Plaintiff's access temporarily was reasonable and viewpoint neutral and, therefore, did not violate the First Amendment. But the Court discerns a separate problem with this claim that it must raise sua sponte: Plaintiff's standing to pursue this claim.

Article III restricts the judicial power of federal courts to actual cases or controversies. Standing asks whether there is a case or controversy capable of being resolved by a court. *See Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992). Because standing implicates a court's subject-matter jurisdiction, a court has an obligation to satisfy itself that standing exists. *Def. of Wildlife v. Everson*, 984 F.3d 918, 944-45 (10th Cir. 2020).

To have standing, a plaintiff must allege (1) an injury-in-fact, (2) traceable to the defendants, and (3) likely to be redressed through a favorable decision. *Lujan*, 504 U.S. at 560-61. In the First Amendment context, an injury-in-fact can be shown through either a credible threat of enforcement of a regulation or a chilling on First Amendment activity. *Ward v. Utah*, 321 F.3d 1263, 1267 (10th Cir. 2003).

Plaintiff's claim in Count 2 seeks prospective injunctive and declaratory relief.[6] Because of the letter ban sent by Owens, he alleges he has a "credible or objectively justified fear of future enforcement of these policies because there has been a past enforcement of the same statute or provision for the same conduct." Doc. 1 at ¶ 85. Past enforcement of a policy for the same conduct can lend credence to a fear of future enforcement, especially where a plaintiff intends to engage in the same conduct. *See Gilmore*, 2022 WL 3139023, at *9; *see also Cole v. Goossen*, 402 F. Supp.

---

[6]  Plaintiff does not seek nominal or compensatory retrospective relief in Count 2. His complaint is specific that the relief he seeks in Count 2 is only declaratory and equitable in nature. The Court holds Plaintiff to his pleading and does not fabricate a claim for retrospective monetary relief for him. Nor is it clear how Plaintiff's claim against Sellers in her official capacity could provide a path for monetary relief for conduct by Owens.

3d 992, 1004-05 (D. Kan. 2019). He only asserts this prospective-looking claim against Sellers in her official capacity, which is effectively a claim against the City of Lawrence. But within the same claim, Plaintiff alleges that it was <u>Owens</u> who banned him, without authority—essentially acting rogue. There are no facts stating why Plaintiff fears the same allegedly rogue conduct in the future from a different party, even to the extent he intends to continue speaking at meetings.[7]

To the extent Plaintiff's claim in Count 2 is for retrospective declaratory relief against Sellers (the City) for an action taken by Owens, there are traceability and redressability issues. The constitutional wrong complained of—the letter ban—was allegedly done by Owens, not Sellers or the City. Seeking declaratory relief against Sellers or the City would not remedy the prior violation, allegedly done by Owens. In addition, even if asserted against Owens, success with respect to this claim would still essentially be "nothing more than a gratuitous comment without any force or effect" as to the legality of the past conduct. *N. Va. Women's Med. Ctr. v. Balch*, 617 F.2d 1045, 1049 (4th Cir. 1980).

Plaintiff has failed to plausibly allege he has standing to pursue his claim in Count 2, which means the Court lacks subject-matter jurisdiction. Count 2 is dismissed without prejudice.

### C.     Count 3 – Procedural Due Process

In Count 3, Plaintiff asserts a procedural due process claim against Littlejohn, Larsen, and Owens, as well as Sellers in her official capacity. This claim arises out of the 2023 letter ban. Plaintiff contends the letter ban violated procedural due process because he had a liberty interest in attending City Commission meetings and being present on city property, and he was deprived of that liberty interest without notice or an opportunity to be heard.

---

[7]     Defendants argue that Owens had authority to issue the letter ban. But Plaintiff's pleadings control at this stage.

Defendants construe this claim as a <u>substantive</u> due process claim that is duplicative of Plaintiff's other First Amendment claims. *See* Doc. 9 at 10-11; Doc. 22 at 13. This misreads Count 3. Count 3 specifically references <u>procedural</u> due process. *See* Doc. 1 at ¶ 98.[8] Because the motions fail to engage with what is being alleged in Count 3, the Court denies the motions as to that claim.[9]

### D.    Count 4 – First Amendment Retaliation and Retaliatory Arrest

Count 4 is a claim for First Amendment retaliation and retaliatory arrest. Plaintiff does not state whom this claim is asserted against. The Court suspects Owens at least because Plaintiff asserts the August 2023 letter ban was unreasonable and viewpoint discrimination. *Id.* ¶¶ 111-113. Brixius, Leslie, and Miller are also discussed in the context of Plaintiff's removal from the September 2024 meeting. *Id.* ¶¶ 116-121. The Court thus discerns this claim to be a retaliation claim against Owens based on the August 2023 letter ban, and a retaliatory arrest claim against Brixius, Leslie, and Miller based on the September 2024 meeting incident.[10]

---

[8]  Defendants do address procedural due process in their reply, noting that the nature of Count 3 is "less than clear." Doc. 29 at 5. The Court does not consider arguments raised for the first time in a reply brief. And while the Court agrees the complaint is "less than clear," Count 3 does specifically reference procedural due process. Doc. 1 at ¶ 98. The Court also notes Defendants never sought a more definite statement of the claims, nor did they assert a Rule 8 challenge.

[9]  Count 3 is focused on Owens's letter ban, which, as explained above, Plaintiff alleges was issued solely by Owens and without the blessing of any ordinance or authority delegated by the City Commission. It is unclear how Littlejohn or Larsen could be individually liable for Owens's action, or how the City could be liable through Sellers in her official capacity for Owens's action as alleged. The Court does note that Plaintiff himself only seems to argue that Count 3 should survive against Owens. *See* Doc. 25 at 7. But the Court must focus on the arguments presented in the instant motion and limit itself to the party presentation principle (unless it implicates subject-matter jurisdiction).

[10]  Littlejohn and Larsen are briefly referenced in Count 4. But it is not clear what conduct by them Plaintiff contends is at issue. They did not issue the letter ban or arrest Plaintiff. It is not the job of the Court to piece together disparate allegations into a cogent claim, especially where Plaintiff is represented by counsel. This is especially true in a 42 U.S.C. § 1983 case where claims must "make clear exactly who is alleged to have done what to whom." *Bledsoe v. Carreno*, 53 F.4th 589, 607 (10th Cir. 2022) (internal quotation and citation omitted). To the extent Plaintiff tries to link those individuals to the August 2023 letter ban, the Court again notes that the complaint states that Owens issued that ban without any authority or blessing of the City Commission, which calls into question any liability Littlejohn or Larsen could have in relation to the letter ban.

### 1.    Retaliation

A claim for First Amendment retaliation has three elements: (1) the plaintiff was "engaged in constitutionally protected activity," (2) the "defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) the "defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212-13 (10th Cir. 2000) (internal quotation and citation omitted).

The Court finds Plaintiff has plausibly alleged a First Amendment retaliation claim against Owens for the August 2023 letter ban. Plaintiff alleges he was engaged in a constitutionally protected activity—speaking during the public comment portion of City Commission meetings. Plaintiff also alleges that Owens's letter prevented him from accessing the forum in person and prevented him from being able to participate in the public comment portion of the meetings. It is reasonable to infer that would chill a person of ordinary firmness from continuing to engage in protected activity. Plaintiff further alleges that the letter ban was motivated by Plaintiff's exercise of his constitutionally protected conduct—his speech at City Commission meetings.

Owens asserts qualified immunity. Qualified immunity shields public officials from liability for certain actions taken in the course of their duties. *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001). It protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* at 1127 (internal quotation and citation omitted). Once a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff. A "plaintiff must first establish that the defendant's actions violated a constitutional or statutory right." *Id.* at 1128 (internal quotation and citation omitted). Second, the plaintiff must demonstrate that the right at issue "was clearly established" at the time of the conduct. *Id.*

On the first prong, the Court has found that Plaintiff plausibly alleges a constitutional violation. Defendants argue that the letter was not in retaliation of Plaintiff's speech but was in response to intimidating conduct and left open alternative channels for communication. Doc. 9 at 9; *see also* Doc. 22 at 6-7. At this stage, Plaintiff's allegations are entitled to a presumption of truth, including his claim that the letter ban was issued because of his criticism of city officials and the viewpoints he expressed. *See* Doc. 1 at ¶ 113.

On the second prong, although it is usually insufficient for a plaintiff to respond to the assertion of a qualified immunity defense by pointing to a right with "a high level of generality," the "more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Herbel v. Marion, Kan., City of*, 2024 WL 4416849, at *14 (D. Kan. 2024). Exclusion of an individual from meetings or preventing public comment because of the viewpoint expressed by an individual's speech is one such circumstance in which a high level of specificity is not required to overcome a qualified immunity defense, at least at the pleading stage. Owens has therefore not established an entitlement to qualified immunity at this stage of the case. The retaliation claim against him survives.

### 2. Retaliatory Arrest

In the Tenth Circuit, a claim for First Amendment retaliatory arrest requires a plaintiff to show the three elements of a First Amendment retaliation claim, plus that he was subjected to a "false arrest," meaning there was no probable cause. *See Bustillos v. City of Carlsbad, N.M.*, 2022 WL 1447709, at *5 (10th Cir. 2022).

Brixius, Leslie, and Miller all assert qualified immunity on this claim. Regarding Miller, Plaintiff does not allege that Miller was involved in the September 2024 incident.[11] Although both

---

[11] To the extent Plaintiff purports to assert a retaliation claim against Miller based on his removal from a meeting on August 8, 2023—something the Court cannot readily discern from the face of the complaint—Plaintiff alleges

Brixius and Leslie were involved in the September 2024 incident, Plaintiff has not plausibly alleged facts that either knew his removal was motivated by his speech. The non-conclusory factual allegations in Plaintiff's complaint suggest that both Brixius and Leslie were responding to instructions from Littlejohn to remove Plaintiff from the meeting and have him cited for trespass. The Court has found qualified immunity applied to officers in a similar situation. *E.g.*, *Gilmore*, 2022 WL 17082681, at *5-7. Even if Littlejohn was motivated by retaliation for Plaintiff's speech, Plaintiff has not alleged that Brixius and Leslie ought to have known that the request was retaliatory.[12]

Additionally, Plaintiff has failed to allege the officers lacked probable cause. Criminal trespass in Kansas is a misdemeanor criminal offense. K.S.A. § 21-5808(b). Criminal trespass occurs—among other ways—when one enters or remains at a structure without authorization or privilege to do so and the person remains there "in defiance of an order . . . to leave" that has been "personally communicated" by an "authorized person." *Id.* § 21-5808(a)(1)(A). Here, Plaintiff has specifically alleged that Littlejohn, who was leading the September 2024 meeting, asked Plaintiff to leave, and Plaintiff refused. Littlejohn then requested Brixius remove him and cite him for trespass. Based on this, Brixius and Leslie had an objectively reasonable basis to conclude there was probable cause to cite Plaintiff for trespassing. The Court finds Plaintiff has failed to state a constitutional violation by Brixius, Leslie, or Miller for his retaliatory arrest claim. They are entitled to qualified immunity.[13]

---

Miller only asked him to leave at Larsen's request. Doc. 1 at ¶¶ 18-19. Miller would be entitled to qualified immunity for the same reasons Brixius and Leslie are based on the September 2024 incident, as discussed below. *See Gilmore v. Beveridge*, 2022 WL 17082681, at *5-7 (D. Kan. 2022).

[12] Leslie's conversation with a third officer, *see* Doc. 1 at ¶ 31, does not indicate that either Brixius or Leslie thought the request was retaliatory based on Plaintiff's speech.

[13] As discussed below, it is not clear that Plaintiff was ever arrested. But the Court need not consider how that impacts the retaliatory-arrest claim for the reasons cited.

In sum, on Count 4, the Court denies the motion as to the retaliation claim against Owens based on the August 2023 letter ban but finds Brixius, Leslie, and Miller are entitled to qualified immunity regarding the September 2024 incident. The Court discerns no other claims in Count 4.

### E.      Count 5 – Declaratory Judgment

In Count 5, Plaintiff seeks declaratory judgment as to all defendants that the Lawrence City Manager does not have authority to ban individuals from city property, that presiding mayors "continue to misinterpret the general comment speaking policy," and that the presiding mayors "continue" to use the police as "personal bouncers at public meetings." Doc. 1 at ¶¶ 139-141.

These claims fail for lack of standing as did Plaintiff's claim in Count 2. There are no facts alleging an ongoing constitutional injury to Plaintiff on any of these points. Thus, he lacks standing because he cannot show an injury-in-fact. The fact that Plaintiff may have suffered an injury-in-fact based on similar past conduct does not translate into an ongoing injury warranting prospective declaratory relief. This claim is dismissed without prejudice for lack of subject-matter jurisdiction.

### F.      Count 6 – Malicious Prosecution

Count 6 is a malicious-prosecution claim against Littlejohn, Brixius, and Leslie concerning the September 2024 incident. Littlejohn, Brixius, and Leslie assert qualified immunity.

Malicious prosecution under § 1983 has five elements. Plaintiff must demonstrate "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Carbajal v. Watada*, 2024 WL 3887252, at *3 (10th Cir. 2024) (internal quotation, citation, and emphasis omitted).

"A mandatory element of a Fourth Amendment malicious-prosecution claim is that the defendant caused the plaintiff to be seized." *Leon v. Summit Cnty.*, 755 F. App'x 790, 796 (10th Cir. 2018).[14] This generally requires arrest or imprisonment. *Id.*; *see also Abukar v. Guieb*, 2024 WL 4679209, at *4 (D. Kan. 2024) ("For purposes of a malicious prosecution claim, plaintiff must allege a seizure in the form of either an arrest or imprisonment."). An otherwise "groundless charging decision" does not "violate the Fourth Amendment absent a significant restriction on liberty." *Leon*, 755 F. App'x at 796 (internal quotation and citation omitted); *see also Becker v. Kroll*, 494 F.3d 904, 915 (10th Cir. 2007).

The parties dispute whether Plaintiff was seized in the context of the Fourth Amendment. Doc. 22 at 10-11; Doc. 25 at 8-9. Plaintiff focuses on a statement by Brixius that Plaintiff was being detained and was not free to go while a notice to appear was being issued. Doc. 1 at ¶ 29.[15] To the extent this constitutes a seizure sufficient to sustain a malicious-prosecution claim, *see Abukar*, 2024 WL 4679209, at *4 ("Moreover, absent some significant restriction on liberty, groundless charging decisions or citations with a notice to appear in court are not Fourth Amendment seizures for purposes of malicious prosecution claims."), it is not clear how this implicates Littlejohn. Littlejohn did not arrest or even detain Plaintiff. This fails to state a claim for malicious prosecution against Littlejohn.[16]

---

[14] "To bring a malicious-prosecution claim under § 1983, a plaintiff must allege a violation of a federal right." *Leon*, 755 F. App'x at 795-96. The complaint cites a violation of the Fourth Amendment. Doc. 1 at ¶ 148.

[15] Based on the transcript in the complaint, it appears this statement was made by Brixius in the course of escorting Plaintiff out of the meeting so that Brixius could write a notice to appear. There are no facts about what came after.

[16] Nor are there facts alleged that Littlejohn "caused the plaintiff's continued confinement after legal process has begun." *Spiehs v. Armbrister*, 2025 WL 548423, at *12 (D. Kan. 2025); *see also Abukar*, 2024 WL 4679209, at *4 ("Malicious prosecution claims under the Fourth Amendment only concern detention after the institution of the legal process."). The only facts alleged about Littlejohn at the September 2024 meeting is that Littlejohn asked that Plaintiff be removed, and Brixius later confirmed Littlejohn wanted Plaintiff removed. Brixius then stated Plaintiff had been criminally trespassed from the meeting. Doc. 1 at ¶ 29.

16

As for Brixius and Leslie, they had an objectively reasonable basis from which to conclude there was probable cause that Plaintiff had committed a criminal trespass by refusing Littlejohn's instruction to leave the September 2024 meeting, as discussed above. This shields them from Plaintiff's malicious-prosecution claim, even though the prosecutor later determined there was no probable cause. *Musick v. Prairie Band Potawatomi Nation*, 2025 WL 1952519, at *8 (D. Kan. 2025) ("In malicious-prosecution cases, our Circuit also has framed the qualified-immunity question as turning on whether there was arguable probable cause for the challenged conduct." (internal quotation and citation omitted)); *Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1150 (10th Cir. 2020) ("His own complaint establishes a basis for probable cause to support his arrest and prosecution. A reasonable officer would have believed that probable cause existed given New Mexico's definition of criminal trespass and the multiple complaints from various tenants about Fenn's behavior.").

The Court dismisses Count 6 with prejudice.

## IV.    CONCLUSION

In sum, the Court dismisses Counts 1 and 6 with prejudice; Counts 2 and 5 without prejudice for lack of subject-matter jurisdiction; and the retaliatory-arrest claim in Count 4 against Brixius, Leslie, and Miller. Count 3 survives in its entirety. Count 4 survives to the extent it asserts a First Amendment retaliation claim against Owens for the August 2023 letter ban.

THE COURT THEREFORE ORDERS that Defendants' motions to dismiss (Docs. 8 and 21) are GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

Dated: June 2, 2026                    /s/ *Holly L. Teeter*
                                       HOLLY L. TEETER
                                       UNITED STATES DISTRICT JUDGE

17